## In re KENNEDY'S ESTATE.*

### No. 15,415; June 12, 1894.

#### 36 Pac. 1030.

**Estate of Decedent—Determination of Heirship—Illegitimate.—** On an issue whether petitioner was testatrix's illegitimate daughter, the exclusion of evidence that testatrix had never mentioned having any daughter was not prejudicial, where petitioner not only made no claim that testatrix had ever recognized her as her daughter, but produced evidence that she had not.

**Evidence—Book of Registered Letters.—** Petitioner introduced evidence tending to show that she received at Buffalo a letter signed C. K. (testatrix's name), containing a railroad ticket and five dollars. It was shown that the address of C. K. was at 616½ N. street, and that at about that time she borrowed five dollars to send, as she said, to her sister at Buffalo. Held, that petitioner might introduce from the book of registered letters of the San Francisco post-office an entry reciting the receipt of a letter from C. K., 616½ N. street, addressed to M. R. (petitioner), Buffalo.

APPEAL from Superior Court, City and County of San Francisco; A. A. Sanderson, Judge.

Petition by Mary Rogers, setting out that she was the daughter of Catherine Kennedy, deceased, and asking for such share in the estate as if deceased had died intestate. From a judgment for petitioner, and an order denying a new trial, J. T. McCormick, executor of the will of J. E. Tomlinson, devisee under the will of Catherine Kennedy, appeals. Affirmed.

Eugene N. Deuprey for appellant; M. J. Platshek, M. S. Eisner and F. S. Stratton for respondent.

SEARLS, C.—Catherine Kennedy died testate at the city and county of San Francisco, April 13, 1887, leaving estate of the value of about $12,000. She was thrice married, and left surviving her one son by her second marriage, named John E. Tomlinson. By her last will she devised all of her estate to the said son. John E. Tomlinson, except three small legacies

---

*For subsequent opinion in bank, see 104 Cal. 429, 38 Pac. 93.

of $100 each, bequeathed to Sarah McCloskey, John E. Mc-
Cormick and Rosa Malone, respectively, and naming James
McCloskey as executor. The will was admitted to probate,
McCloskey appointed executor thereof, and such proceedings
were had in relation thereto that on the eleventh day of De-
cember, 1889, a petition was filed by the executor praying a
distribution of the estate as in the will provided. On the
twenty-third day of December, 1889, Mary Rogers made and
filed her petition and opposition in the cause, in which, among
other things, she set out that she was the daughter of Cath-
erine Kennedy, deceased; that, by an omission not appearing
to be intentional, deceased wholly failed to provide for peti-
tioner in her last will; that she is entitled to a like share or
interest in the estate as though deceased had died intestate,
and prayed that one-half of said estate be distributed to her.
Thereafter, on the twenty-third day of December, 1891, the
matter of the petition of Mary Rogers to participate in the
distribution of the estate of said Catherine Kennedy, deceased,
came on to be heard. A trial by jury was waived by the
parties. The contest was between said Mary Rogers and J. T.
McCormick, the executor of the last will of J. E. Tomlinson,
deceased, who had before that time departed this life. The
question in litigation was as to the maternity of the said Mary
Rogers. The decision was in favor of the respondent, said
Mary Rogers, who was found to be the illegitimate daughter
of Catherine Kennedy, the testator, and one-half of the estate
was distributed to her. The appeal is from the decision, and
from an order denying a new trial to said McCormick, executor
of the last will of said Tomlinson, deceased.

At the trial, counsel for appellant asked Kate Smith, a niece
of Catherine Kennedy, deceased, who was a witness on his
behalf, the following question: "Did you ever hear of any
other child than J. E. Tomlinson?" Questions of like import
were also asked of Mary Matthews and Mary McCormick, to
all of which questions objections were made by counsel for
petitioner, upon the ground that the testimony was incompe-
tent, irrelevant and immaterial. The objections were sus-
tained by the court, and exceptions taken. J. T. McCormick
was also called as a witness on the part of appellant, to whom
the following questions were put: "At any time did Mrs. Ken-
nedy, in speaking of the incidents of her youth, speak of any

daughter of hers, legitimate or illegitimate? A. No. Q. Whom, if any, did you know or observe as the members of the family of Catherine Kennedy during her lifetime? A. The only person that I was acquainted with was John Edward Tomlinson.'' These answers were, on motion of respondent's counsel, stricken out upon like grounds. These rulings are severally assigned as errors. The theory of appellant is that the question of pedigree and relationship was the main issue in the case, and that the testimony of the witnesses above specified contradicted the claim of the illegitimate Mary Rogers, and hence was proper evidence under the Code of Civil Procedure, section 1852, and subdivision 11 of section 1870. Section 1852 of the Code of Civil Procedure is as follows: ''The declaration, act or omission of a member of a family, who is a decedent, or out of the jurisdiction, is also admissible as evidence of common reputation, in cases where, on questions of pedigree, such reputation is admissible.'' Subdivision 4 of section 1870 provides as follows: ''The act or declaration, verbal or written, of a deceased person in respect to the relationship, birth, marriage or death of any person related by blood or marriage to such deceased person,'' etc., may be proven. And by the eleventh subdivision of the same section it is provided that common reputation existing previous to the controversy respecting pedigree, among other things, may be proven. That the acts and declarations of the deceased, Catherine Kennedy, in respect to the relationship of Mary Rogers to her, in a proper case, and where the question is in issue, are admissible, is beyond dispute. The evident object of the inquiry in the present case was, as is shown by the evidence stricken out, as well as by the testimony of other witnesses, who testified without objection, to show that the deceased never spoke of the petitioner as a daughter, and that she was not reputed to be a child of the deceased woman or a member of her family.

Now, the whole theory of the case, as made by the affirmative testimony of the respondent here, was that there never was any recognition of the relationship by her deceased mother, but that, on the contrary, it was studiously concealed from the world. According to that theory, the respondent was born in Ireland; that her mother came to America a few years later, leaving her with her aunts, who still later, but in the

early childhood of respondent, brought her to America and settled with her near Buffalo, New York, where she remained until over forty years of age; that her mother, whom she scarcely saw in America, went to New Orleans, where she settled and was twice married, having two sons, one of whom died, and removed to San Francisco, and married Kennedy, who also died; that deceased learned the address of respondent in Buffalo, New York, and wrote to her there in 1886, inviting her to come to California, inclosing a passage ticket for the trip and five dollars in cash; that in the letter she addressed her as her daughter, and signed herself as her mother, but cautioned her that she "must not call her mother when she did come, because of her son, who did not know of the existence of this child of hers; that her son was a violent and a drinking man, and would be very angry and make trouble if he knew of this illegitimate child"; that when she reached San Francisco her mother met her at the ferry, and, upon becoming known to each other, one of the first cautions of the mother was not to let it be known that she was a daughter; that she was introduced as a niece, remained with her mother not exceeding four or five days, and, finding the place uncongenial, went out to service, and never returned more than a few times to her mother's home. There is no claim whatever of recognition, but, as before stated, affirmative evidence that there was none. In the face of this showing, it is hard to see how the case of appellant would have been made stronger had the negative evidence been admitted. If we concede that striking out the testimony introduced and the exclusion of that offered was technically erroneous, it must be said that the appellant was not injured thereby. The testimony of the witnesses Eisner and Platshek was properly admitted, not as evidence to the main issue, but to contradict and impeach the testimony of the witness James McCloskey as to his statements previously made. It was of trifling importance, but, being admissible, constituted no error. The respondent, having introduced evidence tending to show that she received at Buffalo, New York, a letter from San Francisco, signed by Catherine Kennedy, containing a railroad ticket and five dollars in cash, was permitted, against the objection of appellant's counsel, to introduce in evidence from the book of registered letters of Station B, San Francisco postoffice, the following: "No. 1,637.

Received March 16, 1886, of Catherine Kennedy, 616½ Natoma street, addressed to Mary Rogers, Buffalo, New York.'' There was evidence that the address of Catherine Kennedy was at 616½ Natoma street, and that at about that date she procured from James McCloskey five dollars to send, as she said, in a letter to her sister at Buffalo, New York. The testimony was proper as affording some evidence that the registered letter came from the deceased, Mrs. Kennedy. The identity of name and address was evidence of identity of person.

The only remaining question relates to the sufficiency of the evidence to support the finding that the respondent, Mary Rogers, was the illegitimate daughter of Catherine Kennedy. That the testimony of the respondent, coupled with that of Caroline F. Judd and Mary H. Huntley, supported as it is in a few minor particulars by other testimony, is sufficient, if true, to support the finding, cannot be seriously doubted. Knowing the incentives in such a case to simulate facts and to concoct statements at variance with truth, I have examined with care all of the testimony in the case, only to come to the conclusion that the statements of the respondent as a witness are indicative of a disposition to give utterance to the truth, and that when the whole evidence upon both sides is scanned, and its intrinsic merits compared,. the conclusion is fairly deducible, not only that there was sufficient evidence to uphold the findings, but that the preponderance of evidence was and is with the respondent. The order and decision appealed from should be affirmed.

We concur: Belcher, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order and decision appealed from are affirmed.