[Crim. No. 1797.   Third Dist.   July 20, 1942.]

THE   PEOPLE,   Respondent,   v.   GERTRUDE   YECNY,
Appellant.

W. A. McGugin and Nicolas H. Dubsick for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THE COURT.—Appellant was convicted of the crime of perjury, it being charged in the information that she gave false testimony after being sworn as a witness at a preliminary examination in a case in which her husband, James A. Yecny, had been charged with a violation of section 288(a) of the Penal Code, to-wit, certain sex perversions. The perjured testimony with which appellant was charged consisted of answers made, in which she denied having had a conversation on October 8, 1941, in which she stated that James A. Yecny had committed sex perversions upon her on several specific dates.

Upon the trial, the shorthand reporters who had taken down appellant's statement on October 8, 1941, and also the testimony at the preliminary examination, were called as witnesses, and said statement and testimony were introduced in evidence. In addition, several witnesses testified to having heard appellant make the statements attributed to her on October 8, 1941, and also her testimony at the preliminary examination.

■ Appellant contends "that there is no evidence showing that appellant at any time freely and wilfully, and with freedom of thought and action, stated as true any material fact that she knew to be false." Appellant merely refers us "to the entire testimony at the trial as set forth in the reporter's transcript," and does not cite any testimony or go into any detail, or cite any authority. We have, however, read the record carefully, and it is quite clear therefrom that after making a statement to the deputy district attorney and the constable on October 9, 1941, in which she went into detail as to the acts of sex perversion committed upon her by James A. Yecny, appellant went upon the witness stand in the preliminary examination and denied ever having made any such statements, or any statement accusing her husband of sex perversion.

The crime of perjury is defined by section 118 of the Penal Code as follows:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

There was ample evidence in the record to justify the

jury in concluding that appellant wilfully and contrary to her oath, stated as true, material matter which she knew to be false.

■ Appellant also contends that the court erred in refusing to give to the jury the following instructions offered by appellant:

"1. You are instructed that the intent to swear falsely is the specific criminal intent that must be proved beyond a reasonable doubt by the district attorney to establish the crime of perjury and, if you find from the evidence that Mrs. Yecny was honestly mistaken in her testimony, you must then return a verdict of Not Guilty.

"2. You are instructed that, if you find the defendant, Mrs. Yecny, did not understand the questions put to her by Mr. Coffee when she was under oath, then you must find her Not Guilty.

"3. You are instructed that it is not perjury to swear to that which a witness honestly believes to be true.

"4. You are instructed that it is essential to the crime of perjury that the sworn statement be made with knowledge of its falsity by the perjurer and with freedom of thought and action in so far as menace, threats or kindred inducing causes are concerned and, if you find from the facts introduced in this case that Mrs. Yecny acted by reason of any menace, or threats and not without absolute freedom of thought on her part, then you must find her Not Guilty."

It will be observed that all of these instructions point to the necessity that the prosecution prove a specific intent to swear falsely before the crime of perjury can be proved, and that if the appellant was honestly mistaken in her belief that her statements were true, she cannot be convicted of perjury.

The court in the instant case gave the following instructions upon this point:

"You are instructed that every person who having taken an oath that he will testify truly before a duly elected, qualified and acting Justice of the Peace sitting as a magistrate, *wilfully* and contrary to such oath, states as true any material matter *which he knows to be false,* is guilty of perjury.

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. Intent or intention is manifested by the circumstances connected with the offense, and the sound mind

and discretion of the accused. All persons are of sound mind who are neither idiots or lunatics or affected with insanity. . . .

"The court further instructs the jury that it is not necessary to prove or establish all of the matters alleged and set up in the Information as constituting the charge of perjury against the defendant herein: It is sufficient if you believe from the evidence beyond a reasonable doubt, that the prosecution has proven that any of the matters charged in the Information were so sworn to or testified by the defendant under oath on the occasion of the preliminary examination of the complaint against James A. Yecny, as charged in the Information, and that the same is proven by the prosecution, beyond a reasonable doubt, to have been false and untrue at the time the same was sworn to, or testified to, *to the then knowledge of the defendant,* as charged in the Information, and that the same was material.

"You are instructed that criminal intent is a vital element in the crime of perjury, and if you find from the facts of this case that Mrs. Yecny did not have any criminal intent in making the statements as alleged in the Information, then you must find her Not Guilty."

The court also instructed the jury:

"A witness is presumed to tell the truth. This presumption, however, may be overcome by the manner in which such witness testifies, as well as by other circumstances or conditions such as may be used in testing the credibility of any witness, as I have heretofore instructed you. If you are convinced that a witness has sworn falsely to a material matter, and being convinced that such false testimony was not the result of mistake or inadvertence, but wilfully given with the design to deceive, then all of the testimony of such witness should be disregarded by you, unless such testimony or any portion thereof may be supported by other testimony entitled to greater weight, or for other reasons you may be convinced that the witness has testified truthfully as to a portion of his or her testimony."

We believe the instructions given by the trial court covered all the material matter which was included in the proposed instructions of the appellant. The jury, in determining whether or not the appellant knew the nature of the questions, and fully understood her answers to them, and whether she was under any duress or menace, was deter-

mining her criminal intent. We see no reason for the court to have gone into further detail as to how the jury should have arrived at its decision in determining criminal intent. The evidence does not indicate that the false testimony for defendant was induced by reason of threats, menace or duress, and her own testimony suggests evasiveness rather than any lack of understanding of the questions asked her.

In the case of *People* v. *Mizer*, 37 Cal. App. (2d) 148 [99 P. (2d) 333], at page 154, where perjury was defined by the court in its instructions in the language of the statute, this court had the following to say in regard to the necessary instructions regarding intent in a perjury case:

"The jury was properly instructed with respect to the intent with which the false testimony was given. Perjury was defined in the language of the statute. The jury was plainly told they could not convict the defendant unless it appeared beyond a reasonable doubt and to a moral certainty that, under oath, in a trial before a competent court, he wilfully testified falsely as to material facts, which were not only false, but which he knew to be untrue. It follows that such false testimony is necessarily given with the deliberate intent to deceive the jurors or the court with respect to the essential facts involved."

▇ Lastly, appellant complains "that the district attorney committed error in his argument, and denied appellant a fair and impartial trial." In his closing argument the district attorney asserted in rather strong language that, because of the perjury of appellant, "this filthy man here (referring to James Yecny, appellant's husband), has been dismissed and goes scot free, and this woman ought to be punished for it." We do not believe that the district attorney exceeded the bounds of legitimate argument in this case. Furthermore, counsel for defendant did not assign said, or any statements of the district attorney as misconduct, or ask the court to instruct the jury to disregard it. As is stated in 8 California Jurisprudence, page 508:

"It is a general rule that where an admonition to the jury to disregard misconduct of the district attorney will remove its prejudicial effect, the possible effect upon a jury of improper argument or other misconduct of a district attorney will not be considered upon appeal, unless the defendant promptly called the attention of the court to the alleged impropriety and assigned misconduct thereon, or requested the court to admonish the jury to disregard it. The

reason for this rule is that the court should be given the opportunity to correct the irregularity to prevent any prejudicial effect, if that be possible.''

In view of the foregoing, we conclude that appellant was fairly tried, that the judgment of conviction is supported by sufficient evidence, and that there is no error in the record.

The judgment is affirmed.