[Crim. No. 4736. Second Dist., Div. Two. Apr. 22, 1952.]

THE PEOPLE, Respondent, v. ALFRED DOMINIC GUASTI, Appellant.

458

John J. Bradley and A. James Ayers for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of perjury after trial before a jury, defendant appeals. There is also an appeal from the order denying defendant's motion for a new trial and a purported appeal from the order denying his motion in arrest of judgment.

*Facts*: During the year 1946, Joseph F. Reed was assistant chief of police in the Los Angeles Police Department. The administrative vice squad of the police department was in his command and Lieutenant Rudolph Wellpott was in charge of the squad. James Fisk was on the administrative vice squad, on the team apprehending bookmakers. Undersheriff Arthur Jewell held a position in the sheriff's office of Los Angeles County comparable to that of Assistant Chief Reed in the police department and the two dealt together in matters of jurisdiction of the sheriff and the police department.

Defendant was a captain in the sheriff's office assigned to the anti-subversive detail.

On August 30, 1946, Police Officer James Fisk went into county territory outside of the city of Los Angeles and there made a bookmaking arrest at 1709 East Florence Avenue.

A few days after August 30, 1946, Lieutenant Wellpott and Assistant Chief Reed were in the latter's office. Defendant walked into the office carrying a letter which he threw on the assistant chief's desk. This letter the assistant chief opened and read, then nodded his head at the defendant who turned and walked out. Chief Reed handed the letter to Lieutenant Wellpott and asked him to read it which he did. Lieutenant Wellpott was then told to take the letter to his office. There he gave it to Officer Fisk who read it, took it home, showed

it to his wife and put it in a file with other papers belonging to him.

About a year after he received the letter Mrs. Fisk urged him to get rid of some of the papers which he had accumulated but he decided to retain this letter which he did until about a year later when he gave it to his wife to dispose of. This she did by burning it.

On or about December 12, 1950, the Grand Jury of Los Angeles County was regularly impanelled and undertook a general investigation of vice conditions and protection pay-offs in Los Angeles County. The secretary of the grand jury read to it a statement of the purposes of its investigation as follows: "The investigation before the Grand Jury was an investigation of County officers, particularly with respect to the pattern of vice protection in Los Angeles County, with particular inquiry into the giving and taking of bribes for the protection of vice in this County."

In addition, defendant in his activities and his relationship with a Mr. Contratto was also the subject of investigation by the grand jury. Defendant appeared before the grand jury as a witness and after being sworn was asked the following question:

"Getting back to Joe Reed, the Chief of Police under Chief Horrall—I believe he is entitled to that name—he has informed me, sir, as well as Mr. Wellpott, whom you do not know, that he personally received a letter written by you, signed by you, on the Sheriff's stationery, advising—and I quote only in substance—the Los Angeles Police Department to stay out of the territory of the County, the incident growing out of a visit by Lieutenant Fisk down in the Florence Avenue area. Did you write such a letter?" Defendant replied, "No, sir."

The following questions and answers then ensued:

"Q. I gave you that background because I have interrogated Joe Reed, obviously, and he distinctly remembers not only the letter but the manner of delivery. A. Yes.

"Q. It is your testimony under oath that you never wrote such a letter? A. I don't recall writing such a letter; no, sir."

Various witnesses gave testimony showing the lack of authority of defendant to write such a letter and with reference to the operation of bookmaking establishments in the East Florence Avenue area of Los Angeles County. At the time of the trial witnesses testified that shortly after August 30, 1946, defendant had given Assistant Chief Reed a letter typewritten on the stationery of the sheriff's office of Los Angeles

County which was addressed to Assistant Chief Joseph Reed, and which stated that administrative vice squad officers had gone into the county some distance beyond Los Angeles jurisdictional lines; that Sergeant Fisk had made a statement that it was not the last time he would go into the county, and that the sheriff's office was able to deal with such problems; that such a thing should not happen again. The Los Angeles police were to stay out of the county. At the bottom of the letter the name ''Al Guasti'' was handwritten.

*Questions*: First: *Was defendant's denial of writing the letter material to any issue before the grand jury?*

*Yes.* ■ The law is settled that the matters falsely sworn to need not be directly and immediately material. It is sufficient if it be so connected with the facts directly in issue as to have a tendency to prove or disprove such fact by giving weight or probability to the testimony of a witness testifying thereto. (*People* v. *Barry*, 63 Cal. 62, 64; *People* v. *Phillips*, 56 Cal.App. 291, 293 [2] [205 P. 40]; *People* v. *Dunstan*, 59 Cal.App. 574, 582 [211 P. 813].)

■ Applying this rule to the present case it is apparent that the grand jury had before it an investigation of county officers respecting the pattern of vice protection in the county and the giving and taking of bribes for such protection. The inquiry concerned activities of the sheriff's staff and specifically those of defendant. Testimony was presented to the grand jury with respect to the bookmaking establishments in Los Angeles County and inquiry was being made as to why those conditions existed.

Testimony concerning the letter which defendant denied writing showed that it stated in substance that Sergeant Fisk, a city police officer, had gone into county territory and there made a vice arrest; that the officer had stated that it would not be the last time he would do so; that the letter stated such a thing should not happen again; that he must stay out of the county.

From this evidence the grand jury may have inferred that defendant did not want persons suspected of illegal activities in the county molested by law enforcement agencies, and such letter tended to show that the writer thereof was protecting persons in the county in their illicit activities. This is especially true in view of other evidence that defendant at the time the letter was written was in charge of the anti-subversive squad of the sheriff's office and was not concerned with jurisdictional matters concerning the anti-vice detail.

The fact that he had come to protest anti-vice activities of the Los Angeles Police Department indicated he had some special interest in seeing that vice laws were not enforced.

As the grand jury was investigating whether or not county officers were protecting vice in county areas and was inquiring into defendant's activities the writing of the letter by defendant tended to show he did not desire vice laws enforced in the county, and he had a special interest in seeing they were not enforced. Such letter could have properly influenced the grand jury in determining whether or not vice was being protected in county areas, and whether or not it was being protected by defendant. It was therefore material to the inquiry which the grand jury was making.

■ Second: *Was there a variance between the assignment of perjury and the proof thereof?*

*No.* Defendant contends there was a fatal variance between the allegation of perjury in the indictment, and the proof introduced at the trial in that the assignment of perjury charged him with falsely denying he had written a letter advising the Los Angeles Police Department to stay out of county territory, which incident grew out of a *visit* by Lieutenant Fisk to the Florence Avenue area whereas the proof showed that the incident grew out of an *arrest* made by Lieutenant Fisk in the Florence Avenue area.

This contention is without merit since the evidence disclosed that defendant wrote and delivered the letter shortly after Officer Fisk had been in the Florence Avenue area and made an arrest. Such excursion into county territory might well be referred to as a "visit" into county area. That an arrest was made during such visit does not place the identification of the letter outside the description of it given at the grand jury session and alleged in the indictment. (*Cf. People* v. *Bradbury,* 155 Cal. 808, 810 et seq. [103 P. 215].)

■ Third: *Did the trial court err in admitting secondary evidence of the contents of the letter?*

*No.* Section 1855 of the Code of Civil Procedure provides in part as follows:

"There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases:

"1. When the original has been lost or destroyed; in which case proof of the loss or destruction must first be made. . . .

"In the cases mentioned in subdivisions three and four, a copy of the original, or of the record, must be produced; in

those mentioned in subdivisions one and two, either a copy or oral evidence of the contents.''

In the present case Mrs. Fisk testified she placed the letter in a wastebasket and burned the contents of the wastebasket the following day. Such evidence constituted sufficient proof of the loss and destruction of the letter pursuant to the provisions of section 1937 of the Code of Civil Procedure, which reads:

''The original writing must be produced and proved, except as provided in sections eighteen hundred and fifty-five and nineteen hundred and nineteen. If it has been lost, proof of the loss must first be made before evidence can be given of its contents. Upon such proof being made, together with proof of the due execution of the writing, its contents may be proved by a copy, or by a recital of its contents in some authentic document, or by the recollection of a witness, as provided in section eighteen hundred and fifty-five.''

After having proved the destruction of the letter the People were authorized to prove its contents, execution and delivery. (See *Deacon* v. *Bryans,* 88 Cal.App. 322, 324 [263 P. 371].) ▮ Here the evidence disclosed that defendant entered Assistant Chief Reed's office, threw on his desk the letter, which was typewritten and contained therein at the end the handwritten name ''Al Guasti.''

There is a presumption of identity of persons from identity of name. (Code Civ. Proc., § 1963(25) *In re Kennedy's Estate,* 4 Cal.Unrep. 671, 675 [36 P. 1030].) In addition defendant delivered the letter in person to the assistant chief's office, watched him open, read it and nod to him.

From the foregoing facts the jury was justified in drawing the inference that defendant had written and signed the letter.

Fourth: *Was there sufficient evidence to establish the corpus delicti?*

*Yes.* ▮ To establish the corpus delicti in the crime of perjury it must be proven defendant (a) took an oath that he would testify, declare, depose or certify truly before (b) a competent tribunal, officer or person, (c) that such oath was taken in a case in which an oath may be lawfully administered, and (d) that defendant wilfully and contrary to such oath stated as true a material matter which he knew to be false. (*People* v. *Macken,* 32 Cal.App.2d 31, 34 [1] [89 P.2d 173].)

In the present case there was evidence from which the jury may have inferred that each of the foregoing elements was present.

464

Fifth: *Was there substantial evidence to establish an intent on the part of defendant to deceive the grand jury?*

*Yes.* ▆▆ The intent to swear falsely is the "specific criminal intent" required in perjury trials. (*People* v. *Rodley*, 131 Cal. 240, 260 et seq. [63 P. 351]; *People* v. *Yecny*, 53 Cal. App.2d 474, 478 [128 P.2d 146]; *cf. People* v. *Dixon*, 99 Cal.App.2d 94, 96 et seq. [221 P.2d 198].)

▆▆ In the present case defendant was asked whether he had written a described letter. He denied having written it, and evidence was produced from which the jury could find he had written such letter. The letter tended to show defendant was interfering with the enforcement of the law in county territory. The grand jury before whom he was testifying was investigating the enforcement of the law in such area. Therefore the jury could properly believe that since it was something defendant had himself done he would not have forgotten it, and conclude that because defendant knew he had written such a letter he wilfully and knowingly denied having done so before the grand jury.

In addition the letter tended to establish defendant's connection with the protection of vice in county territory, the very matter which the grand jury was at the time investigating. Hence the jury may have believed that defendant in denying before the grand jury he had written such a letter was motivated by the desire to convince such body he had no connection with the protection of vice. ▆▆ Such motive for testifying may properly have been considered by the jury in determining whether or not defendant knew he was testifying falsely and whether or not he wilfully did so. (*Cf. People* v. *O'Bryan*, 165 Cal. 55, 59 [130 P. 1042]; *People* v. *Miller*, 121 Cal. 343, 346 [53 P. 816]; *People* v. *Todd*, 9 Cal.App.2d 237, 244 [49 P.2d 611]; *People* v. *Darcy*, 59 Cal.App.2d 342, 348 [4] [139 P.2d 118].)

▆▆ Sixth: *Did the trial court err in adopting the theory that the "intent to swear falsely" is the "specific criminal intent" which must be shown to establish the crime of perjury?*

*No.* See *People* v. *Rodley, supra*; *People* v. *Yecny, supra*, and *People* v. *Dixon, supra*.

The statements in *People* v. *Pustau*, 39 Cal.App.2d 407, 417 [103 P.2d 224] and *People* v. *Tolmachoff*, 58 Cal.App.2d 815, 824 [138 P.2d 61], relative to the crime of perjury, that the false statements must be with the intent of deceiving and misleading the grand jury and "intent to deceive" it, are

merely statements approving correct instructions which had been given in each case and do not state rules of law contrary to the rule announced in *People* v. *Rodley, supra,* and other cases hereinbefore cited.

Seventh: *Did the trial court and/or district attorney commit prejudicial error in rulings and objections made in the presence of the jury during the voir dire examination of jurors?*

 Any alleged error of either the trial judge or district attorney during the examination of veniremen was waived by defendant. Before a defendant may complain on appeal of misconduct of the trial judge or district attorney in the examination of veniremen, he must (1) object to such alleged misconduct, and (2) request the trial judge to admonish the veniremen to disregard the alleged improper conduct. (*People* v. *Miller,* 177 Cal. 404, 408 [170 P. 817].)

In the present case defendant neither objected to the alleged misconduct of which he now complains nor did he request the trial court to admonish the jury to disregard the alleged prejudicial remarks. Therefore we will not consider the alleged errors.

 Eighth: *Did the trial court commit prejudicial error in restricting defendant's examination of the veniremen by refusing him permission to ask them if they would follow an instruction that they must believe beyond a reasonable doubt that certain elements of the crime of perjury which were specified existed before they could return a verdict of guilty?*

*No.* The record shows that each juror was exhaustively examined about his understanding of the general rule requiring proof of guilt beyond a reasonable doubt and his willingness to accept the law as given to him by the judge. This examination was ample and sufficient and fully covered the subject as to which defendant now objects.

 Ninth: *Was defendant denied his defense by the trial court's ruling on voir dire examination of the jury that he would not instruct it that it must believe beyond a reasonable doubt defendant's intent to falsify his testimony when he testified before the grand jury, but would give a general instruction that the jury must be convinced beyond a reasonable doubt of the guilt of defendant before it might bring in a guilty verdict?*

*No.* As heretofore demonstrated in answering questions Fifth and Sixth, the trial court's statement and conception of the law on this subject was correct and his subsequent

instructions to the jury in accordance with such rules were full, complete and accurate.

■ Tenth: *Did the trial court err in instructing the jury as follows?*

"In every crime or public offense there must exist a union or joint operation of act and intent. To constitute criminal intent it is merely necessary that a person intend to do an act which, if committed, will constitute a crime. When a person intentionally does that which the law declares to be a crime, such person is acting with criminal intent even though he may not know that such act is unlawful and even though there be no bad motive."

*No.* Defendant's contention that a specific intent to swear falsely is a necessary element of perjury, and that the above instruction was erroneous because it told the jury it might infer the intent to commit perjury from the mere fact that defendant made a statement which later proved to be false is devoid of merit because instructions must be considered in their entirety (*People* v. *Macken*, 32 Cal.App.2d 31, 42 [89 P.2d 173]), and when thus considered it is clear the jury was fully and fairly instructed, for in addition to the above instruction the court instructed the jury thus:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent court, tribunal, grand jury, judge or officer or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath states as true any material matter which he knows to be false, is guilty of perjury."

In this instruction the jury was told the act constituting the crime of perjury is the act of wilfully stating as true something which the person so stating knew to be false. The two instructions taken together constitute a correct statement of the law and the jury could not have been misled by the instruction complained of into believing it might infer that defendant intended to commit the crime of perjury just because he made a statement which was later proven to be false.

In support of the foregoing instructions the trial court further instructed the jury thus:

"An essential element of perjury is that the statement made under oath be wilfully by a person who knows or believes that the statement is false or is aware of his ignorance whether or not it is true. Hence, where there is no wilfulness and consequently no criminal intent, as where a statement is

made under an honest mistake and in a belief that it is true, there is no perjury even though the statement be false.

"The word 'wilfully,' as used in these instructions means the making of the alleged perjurious statement with the consciousness that it was false or with the consciousness that the maker thereof did not know that it was true, and with the intent that it should be received as a statement of what was true in fact.

"The intent with which an act is done is manifested by the circumstances attending the act, the manner in which it is done, the means used, and the sound mind and discretion of the person committing the act. . . ."

It is thus evident the jury was not misled by the questioned instruction.

*People* v. *Geibel*, 93 Cal.App.2d 147 [208 P.2d 743], relied on by defendant, is not here in point. In the cited case it was held that in a forgery case it was error to give an instruction on general intent even though one was also given on the necessity of finding that there was a specific intent to defraud. In the instant case defendant is charged with perjury, and there need be no specific intent to defraud. (*People* v. *Darcy, supra,* p. 348 [4] et seq.)

 Eleventh : *Did the trial court err in refusing defendant's request to give this instruction?*

"You are instructed that the existence of a specific intent in the mind of Mr. Guasti to falsify his testimony at the time he answered the questions asked by the district attorney before the Grand Jury is the gist of the offense of perjury, and unless you are convinced from the evidence, beyond a reasonable doubt, that at the time Mr. Guasti answered the questions of the district attorney he had the particular intent to falsify his testimony, you must acquit the defendant."

*No.* The jury was instructed upon the presumption of innocence, reasonable doubt and burden of proof. The crime of perjury was defined. In the definition of perjury the jury was told that a person who *wilfully* and *contrary to his oath* states as true any material matter which *he knows* to be false, is guilty of perjury. Likewise it was instructed that the word "wilfully" as used in such definition meant "the making of the alleged perjurious statement with the consciousness that it was false or with the consciousness that the maker thereof did not know that it was true and *with the intent that it should be received as a statement of what was true in fact.*"

The jury was also instructed that an essential element of

perjury is that the statement made under oath be made wilfully by a person *who knows or believes* that the statement is false or is aware of his ignorance whether or not it is true. Hence where ''there is no wilfulness and consequently no criminal intent as where a statement is made under an honest mistake and in a belief that it is true, there is no perjury even though the statement be false.''

These instructions fully covered the instructions offered by defendant which were refused by the court. Such instructions pointed out to the jury that it could not convict defendant even though he had testified falsely if he did not know his testimony was false and thus would not have the criminal intent to swear falsely.

Twelfth: *Was the jury fully and fairly instructed so that if the jury had a reasonable doubt as to the truth of defendant's testimony they would have acquitted him?*

*Yes.* As heretofore pointed out, considering the instructions in their entirety and not singling out for consideration alone a particular instruction, the jury was fully, fairly and accurately instructed on each and every element of the crime of perjury and on the other essential rules of law necessary to afford defendant a fair, full and impartial trial.

Thus the following rule stated by Mr. Presiding Justice Finch in *People* v. *Ortiz,* 63 Cal.App. 662, 669 [9] [219 P. 1024], is pertinent: ''Where the court has clearly stated the elements necessary to constitute the crime charged, the jury must be presumed to have understood that in the absence of sufficient proof of any one of those elements the defendant was entitled to an acquittal. . . .'' (See, also, *People* v. *Curtis,* 36 Cal.App.2d 306, 322 [98 P.2d 228].)

The judgment and order denying a motion for a new trial are and each is affirmed.

An order denying a motion in arrest of judgment is nonappealable. (*People* v. *McNamara,* 103 Cal.App.2d 729, 731 [1, 2] [230 P.2d 411]; see, also, cases cited in 16 West's California Digest, 1951, Criminal Law, section 1023(8), p. 732.) Hence the purported appeal from the order denying defendant's motion in arrest of judgment is dismissed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied May 2, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.