140 Cal.App.2d 138 (1956)
THE PEOPLE, Respondent,
v.
ALDEN SAGEHORN, Appellant.
Crim. No. 3180. 
California Court of Appeals. First Dist., Div. Two. 
Mar. 22, 1956.
 Robert H. Kroninger and Kennedy Jackson for Appellant.
 Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, J. Frank Coakley, District Attorney (Alameda), Lawrence Dayton, Assistant District Attorney, and Thomas J. Buckley, Deputy District Attorney, for Respondent.
 KAUFMAN, J.
 This is an appeal by defendant Alden Sagehorn from an order granting probation under certain conditions, after jury verdict of guilty on all three counts of an indictment. Appellant was charged with violation of Penal Code, section 182, subdivision 2 (conspiracy falsely and maliciously *142 to procure another to be charged and arrested for a crime), violation of Penal Code, sections 236 and 237 (false imprisonment), and perjury. The appeal is also taken from the order denying a new trial.
 Appellant was tried with his codefendants Raymond Gaudinier and Oliver Yothers who were also charged with the first two offenses set forth in the indictment. Gaudinier and Yothers were acquitted. The conspiracy count charged that appellant had conspired with these codefendants and with "others unknown."
 William McClure, out of whose alleged false arrest and imprisonment this case arose, was a merchant engaged in a hardware and paint business at 5221 Foothill Boulevard, Oakland. The defendants named in the indictment were all members of the Oakland police force. Late one evening in November, 1954, Sergeant Simin of the Oakland police found McClure asleep in his automobile in front of his store. Simin awakened him and asked for identification. He handed the officer his wallet which contained between $1,200 and $1,300 in currency. Simin handed it back, asked McClure if he had shotgun shells in his store, and when McClure said that he did, Simin said he would be in the next day. The officer came into the store the next morning, asked for two boxes of shotgun shells which McClure procured for him. Simin told McClure that he could have rolled him for $1,000 on the previous night and could have put him in jail. He then left without paying for the shotgun shells.
 Appellant Sagehorn, a lieutenant in the Oakland Police Department, first met McClure early in November, 1954, at Benny Campisi's Fairfax Tavern. Campisi had asked McClure to join the Footprinters, a club of which appellant was secretary. McClure gave appellant his application and the $15 initiation fee. The initiation was to be held on November 19, 1954.
 On the evening of November 16, 1954, McClure had been drinking at Campisi's tavern. He and Campisi decided to go to McClure's store, a few blocks from the bar. Each took his own car. As McClure was making a left turn into a parking lot he collided with another vehicle, but drove on into the lot. Campisi tried to convince the driver of the other car that everything could be taken care of without calling the police, but since the other driver insisted that it be reported, Campisi put in a telephone call from McClure's store. Shortly thereafter a police officer arrived at the store *143 and escorted McClure out to the sidewalk where Campisi was talking with two other police officers. They placed McClure in the back of a patrol car. Sergeant Simin was among the officers present but he took no part in the investigation. McClure was given a citation for an illegal left turn with the notation "HBD," meaning "had been drinking." He and Campisi then went back into the store where Campisi asked him for money to take care of the officers. There was $60 in McClure's wallet. Campisi took $50. There were then five police officers in the store. McClure went behind a partition, telling Campisi that he didn't want to see to whom he gave the money. When he came out again, Campisi had gone but the officers were still there. Simin then asked if he wanted to take care of the patrolmen and McClure asked him, "Well, how about tomorrow?" Simin then said "When do you want to take care of me?" McClure replied, "How about Monday or Tuesday?" Simin said "O. K." and then helped himself to two boxes of shotgun shells which he had McClure put in a bag, saying that otherwise someone might think he had stolen them. Two other officers also took boxes of shotgun shells. The officers left and McClure went to the rear of his store. When he looked to the front again, Simin was approaching him. He told McClure that he could go to jail, be charged with drunk driving, probably lose his license for a year, and perhaps cost him $1,000. He said McClure could make it easy on himself if he wanted to. When McClure asked him what the deal was, Simin asked him if it wasn't worth $1,000 to avoid the publicity. McClure then took $1,000 from the safe and gave it to Simin.
 On the evening of November 17, 1954, Officer Morehead, who had been one of the officers at the scene of the accident, came into McClure's store and asked him for money. McClure said there was no money after last night as the shakedown had been a little heavy, that all he had was his merchandise. He told Morehead that he had given the sergeant $1,000. The officer then looked around the store, took a skillet without paying for it, and had McClure put it in a box for him.
 The following morning when McClure was in Campisi's bar, Simin came in, berated McClure for being a "blabbermouth," saying that he had 21 years' seniority on the Oakland police force and was not going to have it jeopardized. He told him to keep his mouth shut or he would find himself in the estuary. *144
 On November 20, McClure complained of these matters to the Oakland chief of police who sent Lieutenant Guidici and Inspector Lawrence to see him. They gave him a card with their names and telephone number and asked him not to discuss the fact that they had seen him. They commenced an investigation and on December 2, 1954, questioned Campisi. That same day Campisi told appellant Sagehorn about the investigation. On December 4, 1954, Officer Warren, who had been at McClure's store on the night of the accident, was called from duty for questioning at about 6 p. m., returning to duty afterward.
 On the evening of December 4, 1954, McClure went to the Here's How Tavern at Laverne and Foothill in Oakland between 8 and 9 p. m., parking his station wagon in front of the tavern. He had two bottles of beer, two sandwiches and two cups of coffee during the time he spent there. He talked to a Carol Bowers for about two and one-half hours during which time he drank nothing alcoholic. While there, he created no disturbance. When he left, Miss Bowers went with him to the car, and stood talking to him after he had got in behind the wheel. An officer in uniform came from across the street, opened the car door, and took McClure by the arm, saying that he was wanted.
 Officer Beedle, who took McClure in to Eastern Station with him, was assigned to districts 55 and 56 which did not include the area where the Here's How Tavern was situated. At about 1:15 a. m. on the morning of December 5, Officer Beedle had reported in by radio, and a message was broadcast to him to call his lieutenant at once. He called in and was connected with appellant. Appellant informed him that there was a man in a bar at Foothill and Laverne, about 55 years old, with grey hair, wearing brown pants and brown shirt, and that he had a green station wagon. Beedle was told to find this man and bring him into the station. After receiving these orders, Beedle went to the corner of Laverne and Foothill, parked across the street from the tavern, and waited till he saw a man answering the description, enter the station wagon.
 When Beedle and McClure arrived at Eastern Police Station, Beedle showed McClure to appellant, asking if he was the man. Appellant said he was, and told Beedle to take him into the booking room. He did so, giving Officer Yothers, one of defendants, McClure's name, address, and where he *145 had picked him up. He said that appellant would supply the other information.
 McClure stated that the first thing said at the booking desk by one officer was "Here is your ringer." Officer Gaudinier, one of the defendants, said, "Oh, a fink." He was then searched. McClure attempted to tear up the card given to him by the investigators, Lieutenant Guidici and Inspector Lawrence, but it was snatched from him, and Gaudinier told him that he would break his arm if he destroyed it. Gaudinier handed the card to Yothers saying, "Well, he is the ringer all right." Gaudinier asked McClure how much money he had. He said about $50. When they counted it and found he had $50.15, they remarked on how smart he was, calling him a vulgar name. Gaudinier asked if Simin was around, and an unidentified voice replied that he had just left.
 McClure was searched, placed in a cell and given a receipt for his property. He was taken in a patrol wagon to the jail at the city hall. At about 8 a. m. he was released after putting up $25 bail. Later, he appeared in court on the charge of "drunk in a public place," a violation of the Oakland Municipal Code, and the charge was dismissed. Shortly after McClure had been brought into Eastern Station, appellant left and did not return until after McClure had been taken to the city hall.
 An arrest report by the Oakland Police Department is made up in a set of five, each in a different color. The white one is kept by the station in whose jurisdiction the arrest is made, the remaining copies are brought to the city hall when the prisoner is brought in. It is customary to have all copies approved by the commanding officer of the station before leaving with the prisoner. The station copy in the present case contained appellant's signature, and the offense was described thereon as "Drunk and exposed to public view." The copies did not bear appellant's signature, and those copies contained the additional words "Creating a disturbance at the above address." The additional language made the bail for the offense $25. The offense described on the original required bail of $10. The addition was found to have been made on a typewriter at the city hall which was located in the search room into which prisoners are brought from outlying stations. All officers on duty at the time at city hall denied making the addition.
 Appellant Sagehorn appeared as a witness before the Alameda County Grand Jury. At the trial he denied he had *146 broadcast a message to Officer Beedle on December 5 and denied that he had had any telephone conversation with him concerning McClure. Before the grand jury he had stated that he had no recollection of any such radio message or telephone conversation.
 Appellant contends that the evidence was insufficient to support the verdict of guilty as to any of the counts of the indictment. As to the conspiracy count it is argued that there is nothing more in the record than a suspicion of guilt, and that since appellant's codefendants Gaudinier and Yothers were acquitted, the jury did not believe that they participated in a conspiracy with appellant or with any other persons. Even if it be assumed that appellant described McClure to Beedle and had him brought in, he contends there is no showing that other persons had any direct or tacit mutual understanding to accomplish such unlawful purpose.
 [1] If the indictment had simply charged appellant and his two codefendants with conspiracy to falsely and maliciously procure the arrest and imprisonment of McClure, the acquittal of the two codefendants would have made appellant's conviction erroneous. However, the indictment herein charged also "other persons to the grand jury unknown." If there is evidence from which it can be inferred that persons other than the codefendants conspired with appellant then the conviction may stand. (People v. McCollum, 26 Cal.App.2d 89, 96 [78 P.2d 1030].) [2] Such agreement may consist of a tacit mutual understanding to commit a crime. (People v. Yeager, 194 Cal. 452, 484 [229 P. 40].) [3] It may be proved by circumstantial evidence, and it is not necessary to show that the parties met and agreed to the performance of the unlawful acts, nor that they had a previously arranged plan. (People v. Steccone, 36 Cal.2d 234, 237 [223 P.2d 17].) [4] Here there is evidence that appellant was a close friend of Campisi, that he was told by Campisi of the investigation in the police department initiated by McClure's report prior to the night of December 5, 1954. He was the person who ordered Officer Beedle to bring in McClure and described him in detail. There was Beedle's testimony that he had asked appellant if McClure was the man he wanted, and that appellant had ordered him booked. Although the codefendants were acquitted of participation in the conspiracy, their conversation in which they abused McClure as a "ringer" and a "fink" shows knowledge on the part of police at that station that McClure was looked upon with contempt as an informer. *147 Sergeant Simin, the officer who allegedly extorted the $1,000 from McClure was in the station at about the same time, as Gaudinier asked for him while booking McClure, and was told he had just left. It is noteworthy that appellant who had not seen McClure earlier that night was able to describe his clothing to Beedle and name the tavern where he could be found. This fact shows activity in a plan which necessarily had to be carried out by someone other than the appellant. There were several possible confederates. There was Campisi, Sergeant Simin who certainly had a motive, and who although not on duty was around the police station at about the time McClure was brought in. There were the other officers who had taken bribes at the time of McClure's accident. The changing of the arrest report at the city hall, which could not have been done by appellant personally is further evidence of a conspiracy against McClure.
 As to the false imprisonment count, the evidence is sufficient to show that the arrest was without justification. Officer Beedle arrested McClure on the order of his superior. While the evidence is conflicting as to McClure's intoxication, there is substantial evidence that he was not intoxicated. [5] In order to establish the offense of false imprisonment the people need only show the imprisonment, and the burden is on the defendant to prove justification and that the imprisonment was lawful. (People v. McGrew, 77 Cal. 570, 571 [20 P. 92].)
 Appellant claims that the record contains no proof of perjury and that furthermore there was no corroboration. Perjury is defined by section 118 of the Penal Code as the statement under oath "as true any material matter" which the witness "knows to be false." "Perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances." (Pen. Code, 1103a.) It is argued that even if Beedle's testimony is regarded as true, it does not support the charge of perjury, for perjury is not wilful where the oath is according to the belief and conviction of the witness. (In re Lindley, 29 Cal.2d 709, 723 [177 P.2d 918].) Any falsity in appellant's testimony would not lie in whether he did or did not do certain things on the night of December 5, but whether at the time that he testified before the grand jury he actually remembered those facts when he stated that he had no recollection of them. The corroborative circumstances must be considered "without the *148 aid of the testimony which is to be corroborated" and "it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value." (People v. MacEwing, 45 Cal.2d 218 [288 P.2d 257].) Furthermore, appellant says, there is no showing that the testimony alleged to be false was in any way material. Unless it could have influenced the grand jury upon a material issue, though false, it could not support a conviction for perjury. (People v. Ah Sing, 95 Cal. 657 [30 P. 797]; People v. Brophy, 49 Cal.App.2d 15, 24 [120 P.2d 946].)
 If a matter falsely sworn to is connected in such manner with facts directly in issue that it would tend to prove or disprove such facts "by giving weight or probability to the testimony of a witness testifying thereto," it has been held to be a "material matter." (People v. Guasti, 110 Cal.App.2d 456, 461 [243 P.2d 59].) Appellant testified directly that he did not talk to anyone about bringing McClure into the police station. There was introduced in evidence the official record made in the regular course of duty at the police station showing that Beedle had received an order shortly before McClure's arrest to call his lieutenant, who was appellant. It is true that the message in itself "Call your lieutenant" proves nothing except that he was asked to talk to appellant. [6] Corroborating circumstances may come from a defendant's own testimony when he testifies in his own behalf. [7] As said in People v. Todd, 9 Cal.App.2d 237, 241 [49 P.2d 611], "Corroborative evidence need not be strong, nor even be sufficient in itself without the aid of other evidence to establish the fact. (Citations.) The circumstances legally sufficient to sustain a conviction may consist of the extrajudicial statements, declarations, admissions or confessions of the accused (citations); his silence in the face of accusatory statements (citations); or, as stated, where he voluntarily becomes a witness in his own behalf, it may be gathered from his own testimony (People v. Watson, supra [21 Cal.App. 692 (132 P. 836)]) or his conduct and attitude as a witness (State v. Miller, supra [24 W.Va. 802])."
 [8] In his testimony before the grand jury appellant denied knowing anything about the investigation until after the arrest of McClure on December 5. He also said that the time he talked with Campisi in regard thereto was on the day that the investigating officers had talked to Campisi. That day was shown by the records of the stenographer for the police department to have been on December 2, 1954. Before *149 the grand jury appellant had testified that he could not recall having given any order to Beedle to pick up McClure, that he did not know whether he had given such instruction or not. Shortly thereafter he testified that he wouldn't give such an order, for how would he know where the man was, that one never gives orders to go out and pick somebody up, that it can only be done with a warrant, that it was unbelievable, that even a rookie knows better. The jury was certainly justified in believing that if he had given an order which he claimed was so unusual, he would surely remember it; and if he had not given such an order at a time about two months earlier he could certainly say positively that he had not. In People v. Guasti, 110 Cal.App.2d 456 [243 P.2d 59], a perjury case in which appellant was asked if a letter allegedly signed by him, had in fact been written by him, he answered, "I don't recall writing such a letter; no, sir." The court there said that the jury could believe that since it was something defendant himself had done he would not have forgotten it, and that because he knew he had written it, he wilfully and knowingly denied having done so. Appellant, herein, at the trial flatly denied having had a conversation with Officer Beedle over the telephone concerned with the description of McClure, and denied having talked with any person on the morning of December 5 in regard to the arrest of McClure. This was clearly testimony that at a much later date he had a distinct recollection of the events of that evening whereas his testimony before the grand jury was that he had no recollection. This inconsistent position on the part of appellant could be considered by the jury as a corroborating circumstance.
 There is no merit in the argument that assuming the truth of Beedle's testimony it does not contradict or make false appellant's testimony where he testified that he did not recollect having done or said the things that Beedle testified to. Even though appellant there phrased his answers as opinions, their effect was to discredit Beedle's testimony in a material matter. [9] If a person wilfully swears falsely to a belief in the existence of a fact which he knows does not exist, he is guilty of perjury. (People v. Dixon, 99 Cal.App.2d 94, 96 [221 P.2d 198].)
 [10a] Appellant claims error was committed by the trial court in failing to instruct the jury that a conviction cannot be had upon the testimony of an accomplice unless it be *150 corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. (Pen. Code, 1111.) Whenever there is evidence that would justify the jury in concluding that a witness was an accomplice, it is error to fail to give the instruction. (People v. Buffum, 40 Cal.2d 709, 724-725 [256 P.2d 317].) Respondent points out that such an instruction was not requested, but the case cited above holds that in an appropriate case the jury must be instructed by the court on its own motion in regard to corroboration.
 Respondent simply states that Officer Beedle was not an accomplice, but a helpless vehicle used by appellant to realize his aim and cites People v. Haley, 102 Cal.App.2d 159 [227 P.2d 48], a case wherein it was held that the accomplice instruction was not erroneously refused where defendant was convicted of solicitation of perjury, and there was absolutely no evidence that the person whom she had solicited to give false testimony, had ever solicited anyone to commit a crime. Since he could not be liable to prosecution for the identical offense, such an instruction had no place in the trial. As to the perjury count, clearly there was no evidence that Beedle was an accomplice of appellant. As to the conspiracy count there is no evidence pointed out by appellant that Beedle conspired with anyone. Appellant says that it is incredible that a police officer of Beedle's years of experience would innocently make an arrest contrary to section 836 of the Penal Code, and that the jury could just as well conclude that he participated knowingly in any offense which was committed. There is evidence that Beedle received an order from his superior to bring McClure in. There is no evidence that Beedle knew anything about McClure's activities in reference to the police prior to this night, or that he had any reason to question the order of a superior officer. If the lieutenant was believed, and the jury concluded that he did not give the order, then the inference would be that Beedle made the arrest on his own, and was attempting to lay the blame on the appellant. McClure's testimony was that Beedle had taken him directly in to the booking room where he was searched and booked by appellant's codefendants. Beedle's testimony is somewhat inconsistent with this, for he claims to have taken McClure first to appellant's office asking him if he were the man he wanted brought in. It will be remembered that McClure knew appellant. It would seem that he would remember that incident as the first thing that happened *151 in the station. This testimony may be said however, not to tend to prove that Beedle was an accomplice of appellant's, but rather that he was acting independently of appellant in making the arrest. [11] An accomplice is one who knowingly, with common intent with the principal offender unites in the commission of the crime, and who must be liable for prosecution for the same offense. (People v. Frahm, 107 Cal.App. 253 [290 P. 678]). [10b] Appellant in his argument that the evidence was insufficient to support the conspiracy charge stated that there was no evidence "that appellant agreed or joined with any person or persons in any conduct on his part relating to McClure, and that at best no more than a mere suspicion of such an association can be raised." According to appellant's own appraisal of the evidence, there was nothing on which to base the accomplice instruction. [12] It is urged that prejudicial error was committed in giving an instruction relating to counts one and two, which is CALJIC instruction Number 26 relating to the duty of the jury to accept the construction pointing to defendant's innocence where two reasonable constructions are possible; and where two constructions are possible, one reasonable and one unreasonable, the jury's duty is to reject the unreasonable construction. Furthermore, if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict. Respondent maintains that the court correctly limited the instruction to the first two counts and did not so instruct in regard to the perjury charge because the evidence supporting that charge was principally direct testimony, that given by Officer Beedle. In People v. Simeone, 26 Cal.2d 795, 807 [161 P.2d 369], where such an instruction was refused altogether, it was argued that as to Counts I and II the instruction was applicable. The court held, however, that its refusal was not prejudicial error, "since the prosecution's case was based primarly on direct testimony of eye-witnesses and the circumstantial evidence was merely incidental and corroborative of the direct evidence." Since that is true in the present case in regard to the perjury count, no prejudice could have resulted. (And see People v. Monge, 109 Cal.App.2d 141, 144 [240 P.2d 432].)
 [13] The trial court instructed the jury on the usual limitations on prior inconsistent statements of a witness and then instructed that "if the witness was the defendant and *152 if evidence of some prior or contradictory statement assertedly made by him has been received, such evidence may be considered in determining the truth or falsity of such statement as well as for the purpose of testing the credibility of the defendant as a witness, and along with all other evidence in determining his innocence or guilt." The instruction does not appear to be subject to the interpretation made by appellant, that it could mean to the jury that a prior inconsistent statement made by any one of defendants could be used for the purpose of establishing the truth of the matters referred to therein by any of the defendants. The instruction clearly states that when a contradictory statement has been "made by him," it may be considered in determining the truth or falsity of such statement and in making a determination of that defendant's innocence or guilt. The instruction is not ambiguous.
 It is claimed that although the jury was correctly instructed that an essential element of perjury is materiality, the trial court then instructed that "The question of materiality of the statements is one of law for the court to decide, and not a fact for the jury. I, therefore, instruct you, ladies and gentleman, that as a matter of law, that the particular matters set forth in the third count of the indictment and alleged to be false were material to the investigation being conducted by the Grand jury at that time." He also instructed that when it was charged in one count that defendant made more than one perjured statement, it need be shown only that he made one of such statements, "provided that as to that one statement, the proof is adequate under the law and shows that every essential element of the crime of perjury, as I have defined those elements, was present in the making of such statements."
 One of the excerpts of testimony which the court read to the jury from the appellant's testimony before the grand jury related to the telephone call which Beedle claimed had been made giving instructions for McClure's arrest. Appellant says in view of the instructions a conviction could have been had on the answer to the first question in this excerpt. "Q. You don't know any reason why Officer Beedle should lie about it, do you? A. No, I don't. I have no idea why." Prior to this appellant had given testimony that he could not recall having phoned instructions to Beedle. This inconsequential question was simply a part of the excerpts of testimony relating to the telephone call which was a very material matter. *153 Whatever his answer to that question, it would be only an opinion of the witness, and would not meet the test of perjury under the other instructions given. The excerpt of testimony from which this question was extracted was from a series aimed at finding out whether or not the telephone call was made.
 There was no error in instructing the jury as a matter of law that certain excerpts from the testimony before the grand jury were material. [14] It is settled that it is the exclusive right of the trial judge in a criminal action to determine the materiality of the alleged perjured testimony and to instruct the jury thereon. (People v. Macken, 32 Cal.App.2d 31, 41 [89 P.2d 173]; People v. Brophy, 49 Cal.App.2d 15, 24 [120 P.2d 946]; People v. Lem You, 97 Cal. 224 [32 P. 11].) Appellant says the Lem You case and those following it are in error, but these authorities have not been overruled.
 The court instructed that the testimony of the witnesses McClure and Beedle before the grand jury was read into evidence against the appellant and was admitted merely for the purpose of showing that such testimony had been given and was limited to that purpose, and was not admitted to prove that testimony anew. This instruction properly informed the jury of the limited purpose for which it was introduced. Furthermore since the jury was instructed by the trial court as to what parts of the grand jury testimony were material, those were the only portions that could be considered by it in its deliberations.
 [15a] It is charged that the trial court made numerous erroneous rulings in the admission and rejection of evidence. McClure was permitted to answer over objection a question as to whether he was familiar with the interior of Eastern Police Station. He answered that he had never been there before. This could not possibly have been prejudicial to appellant, and the claim that this question and answer counteracted the adverse effect of McClure's history of drinking by giving the impression that if he had not been in that police station he had never been previously arrested, is unfounded. Objection was sustained to questions relating to whether McClure had been an alcoholic in November, 1954, and whether within the six-month period prior to the trial in May, 1955, he had been treated at a sanatorium for alcoholism. Appellant relies on People v. Salladay, 22 Cal.App. 552 [135 P. 508], but in *154 that case the offer of proof was that the witness had been constantly drunk for 16 days and was drunk on the evening in controversy. [16] It is proper to prove that the witness was intoxicated at the time the events narrated occurred (People v. Singh, 19 Cal.App.2d 128, 129 [64 P.2d 1149]) but it has been held not error to exclude testimony of intoxication of a witness when the question was asked as to his condition on the day of the crime was not directed to his condition at the time when the crime was committed. (People v. Acosta, 21 Cal.App.2d 57, 65-66 [68 P.2d 298].) [15b] Furthermore, appellant achieved his objective by introducing in evidence the fact that McClure had entered a sanitorium for alcoholism on November 22, 1954, and remained there for several days.
 Appellant contends that an objection should not have been sustained to a question asked Officer Beedle as to whether he had told anyone of the police department, or anyone else, that he had arrested McClure because he was drunk. [17] The purpose, appellant says, was to show prior inconsistent statements If that was the purpose, then he should have introduced the prior inconsistent statements as prescribed in section 2052, Code of Civil Procedure. (And see People v. Ronsse, 26 Cal.App. 100, 105 [146 P. 65].)
 [18] There is no merit in appellant's assertion that the appellant's oath before the grand jury was limited to February 4, 1954, the date of his first appearance before it. The oath prescribed by section 2094 of the Code of Civil Procedure is "that the evidence that you shall give in this issue (or matter), pending" shall be the truth. The original oath bound him for the duration of the proceeding, and he did not have to be sworn on succeeding days.
 [19] Appellant asserts that it was prejudicially erroneous to permit the police stenographer to testify that he was present on December 2 when Campisi was questioned in regard to a matter involving McClure; that he was present on December 4 when Officer Warren was questioned regarding the same matter; and on December 6 and 7 when Shelton and Simin were interrogated. Two of these instances being after December 5, could have no bearing on a motive for the false arrest. The testimony was admitted over objection, and the court admitted it subject to a motion to strike if the prosecution did not later show the connection. Appellant does not show that he ever made such a motion. A failure to *155 move to strike is a waiver of the objection. (People v. Cucco, 85 Cal.App.2d 448, 452 [193 P.2d 86].)
 [20] Appellant objected to the reading into evidence of McClure's and Beedle's testimony before the grand jury. As above noted, the court instructed that this testimony was not read to prove the facts therein, but only to show that such testimony had been given. It was necessary for the trial judge to have this testimony in the record in order that he could judge of the materiality of the statements in the indictment made by appellant.
 All of appellant's testimony before the grand jury was read into evidence over his motion to strike. [21] A defendant's extrajudicial declarations are subject to the same restrictions as those of any other person, except admissions and confessions. [22] This testimony, appellant argues, did not constitute an admission, and was extremely prejudicial because it contained statements of the district attorney and jury foreman which showed antagonism toward appellant. The district attorney said at one point "You are even more involved in what happened the 4th of December then you are the night of the 16th of November so far as we know. May be you are more involved than we know about." And again appellant was accused of not cooperating with the district attorney. Respondent maintains that since the entire conduct of the accused may be looked to, his extremely evasive testimony before the grand jury could be introduced as evidence of corroborative circumstances. The statements of the district attorney and grand jury foreman were not evidence of appellant's conduct, and the jury could not be permitted to so consider them. Appellant made a motion to strike the testimony as a whole. But there is no showing that he made any specific objections to the portions now pointed out as prejudicial. Such a specific objection was essential because a general objection was not good. Furthermore, the jury was properly instructed to the effect that statements of counsel are not evidence and are to be disregarded by them. We find no prejudicial error here.
 The question was asked of defendant Yothers: "Well, did Officer Gaudinier say anything to you when--as he came back to the booking room?" Yothers replied: "The first time--first time I noticed Gaudinier, he came out, and he says, 'The Lieutenant told me to come out here and stay right with you and help book this man.' " The testimony was clearly inadmissible as to appellant, and was hearsay as to *156 him. However considering the entire testimony in the record this error was not prejudicial and there was no miscarriage of justice. (State Const., art VI, 4 1/2.)
 It is our view that no prejudicial error appears in the record before us and that appellant had a fair and impartial trial.
 Judgment and order denying a new trial affirmed.
 Nourse, P. J., and Dooling, J., concurred.