[Crim. No. 3175.   Second Appellate District, Division One.—March 31, 1939.]

THE PEOPLE, Respondent, v. JUANITA MARIE MAC-KEN, Appellant.

S. S. Hahn and W. O. Graf for Appellant.

Earl Warren, Attorney-General, R. S. McLaughlin, Deputy Attorney-General, Buron Fitts, District Attorney, and John W. Loucks, Deputy District Attorney, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, defendant was accused in six counts of the crime of perjury. Trial by jury resulted in her conviction on the first three counts. The fifth count was dismissed upon motion of the district attorney, and the jury acquitted defendant upon the fourth and sixth counts. From the order denying her motion for a new trial, appellant prosecutes this appeal.

Count I alleged the institution and existence of a divorce action between appellant and her husband in the Los Angeles County Superior Court; that during the pendency of such litigation and in connection therewith the court issued an order directing her to appear and show cause why she should not, during the pendency of the divorce action, among other things, be restrained from disposing of approximately $4,000 in cash allegedly then in her possession; that at the hearing

had upon such order appellant appeared in court and testified that approximately $2,800 had been stolen from her on the evening of June 16, 1937, at the time her husband and his attorney had broken into her home and served her with the divorce papers and a copy of said order. The falsity of such testimony is made the gravamen of this count.

Count II alleged that on June 30, 1937, appellant prepared and filed in said divorce proceedings an affidavit setting out substantially the same facts with reference to the theft of the $2,800, together with other averments not here material; that this affidavit was filed as the basis of her application for an order to show cause directed against her husband, ordering the latter to appear in said superior court to show cause why he should not be required to pay appellant's attorney's fees, court costs, alimony *pendente lite,* allowance for support, and *in re* custody of a minor child of the parties. The falsity of that portion of the affidavit referring to the loss of the $2,800 furnishes the basis of this count.

Count III alleges the falsity of testimony given by appellant with reference to an alleged disappearance of the $2,800 upon a hearing conducted in said superior court on July 13, 1937, pursuant to the order to show cause referred to in count II.

The allegations of all counts may be epitomized in the statement that appellant was accused of falsely swearing that on the night of June 16, 1937, she had the sum of $2,800 in cash in her purse; that the last time she saw the purse it was on the divan in her residence at 5734 Harcourt Street, Los Angeles; that on the night in question her husband, Dr. William Wesley Macken, and his attorney came in the back door of her residence without her permission, and after an altercation they left her residence, and that after they had gone she discovered the $2,800 was gone; and that she had given no one permission to take the money.

The main ground of this appeal is the claim that there is a total absence of any positive testimony to prove the defendant guilty of the crimes charged for the reason that there was no proof of the *corpus delicti;* that it was incumbent upon the prosecution, by direct testimony, to prove the negative fact that Dr. Macken did not take the $2,800. To establish the *corpus delicti* in the crime of perjury, it must be proven that the defendant took an oath that he would testify, declare,

depose or certify truly before a competent tribunal, officer or person; that such oath was taken in a case in which such an oath may by law be administered; and finally, that wilfully and contrary to such oath, the defendant stated as true a material matter which he knew to be false. (Pen. Code, sec. 118.) (*People* v. *Wells,* 103 Cal. 631 [37 Pac. 529] ; *People* v. *Rodley,* 131 Cal. 240 [63 Pac. 351].) The terms "direct evidence" and "positive evidence" are interchangeable and synonymous. (Words and Phrases, vol. VI.)

█ It is true that perjury must be proved by the testimony of two witnesses or one witness and corroborating circumstances. (Sec. 1968, Code Civ. Proc.; sec. 1103a, Pen. Code.) However, this does not mean that it is necessary to produce someone who was present at the defendant's home on the evening of June 16, 1937, to supply direct evidence that Dr. Macken did not steal the money. It is, however, necessary to have positive testimony as to facts that are absolutely incompatible with the innocence of the accused. (*People* v. *Porter,* 104 Cal. 415 [38 Pac. 88] ; 20 Cal. Jur. 1023.) Positive testimony of a state of facts contrary to that sworn to by the accused or absolutely incompatible or physically inconsistent with her evidence, may be sufficient. (*People* v. *Chadwick,* 4 Cal. App. 63 [87 Pac. 384] ; *People* v. *Casanova,* 54 Cal. App. 439 [202 Pac. 45] ; *People* v. *Follette,* 74 Cal. App. 178 [240 Pac. 502].) It was said by the court in *People* v. *Chadwick, supra*:

" 'Direct evidence' is declared in section 1831 of the Code of Civil Procedure to be 'that which proves the fact in dispute directly without an inference or presumption and which in itself, if true, conclusively establishes that fact'. Upon a trial for perjury, direct evidence is not limited to a denial *in ipsissimis verbis* of the testimony given by the defendant, but includes any positive testimony of a contrary state of facts from that sworn to by him at the former trial, or which is absolutely incompatible with his evidence, or physically inconsistent with the facts so testified to by him."

And in *People* v. *Casanova, supra*:

"The statute respecting the *quantum* of evidence necessary in perjury cases will be satisfied if there be the testimony of one witness to facts that are absolutely incompatible with the innocence of the accused, corroborated by circumstances which, of themselves and independently of such directly in-

culpatory evidence, tend, with a reasonable degree of certitude, to show that the accused is guilty as charged.''

In *People* v. *Wells, supra,* upon which case appellant relies, the court said:

''As we have already suggested, in order that the evidence may be sufficient, there must be positive testimony to a contrary state of facts from that sworn to by the defendant at the previous trial. For instance, to support the charge of perjury as to the alleged false statement of defendant that he met the cow at the time stated upon this particular public highway, it was necessary to produce the positive testimony of one witness at least that such meeting did not take place, as that the defendant was not at that time at that place, or that the cow was not there, . . . ''

If the latter part of this language were applied to this case, it would read: ''It was necessary to produce the positive testimony of one witness at least either that Dr. Macken did not steal the money or that the money was not stolen at all.'' When Dr. Macken was called as a witness to testify that he did not steal the money, appellant successfully interposed an objection to his testimony on the ground that being the husband of the defendant, his testimony against her was barred by the provisions of section 1881, subdivision 1, of the Code of Civil Procedure. It then became necessary for the prosecution to prove that the money was not stolen by anyone, but in fact remained in the possession of the defendant on and after the visit of her husband and the latter's attorney to her home on the evening of June 16th. While there may be an absence of what the law denominates ''direct evidence'' as to Dr. Macken's not stealing the money, there is positive evidence that his attorney did not steal it, and there is positive evidence that it was not stolen at all, by Dr. Macken or anyone else, or at least positive evidence showing a state of facts absolutely incompatible and inconsistent with the defendant's oath-bound statement that larceny of the money occurred. There is positive evidence that at the hearing on the order to show cause appellant was sworn and testified, in substance, that she had withdrawn the sum of $3,116 from the bank and had placed $2,800 of the money in an envelope which she had hidden under one of the cushions of the davenport in the living room, and on the night of June 16th her husband and his attorney broke into the house; that she had an altercation with her husband, and after he had

left she discovered that the envelope and the $2,800 were gone, and that she had given no one permission to take the same. It was proved, however, that on June 18th, two days after appellant claims the money was stolen, she went to the residence of a friend and the latter's two daughters, and left with them an envelope, stating that it contained valuable papers. Later that day appellant stated to one of the daughters that the envelope contained $3,000 in cash. During the time these people had possession of the envelope left with them by appellant, the latter called on different occasions to take money from the envelope, and on these occasions the custodians had an opportunity to observe its contents. It was further proved by direct evidence that on October 14, 1937, appellant called at the home of the women with whom she had left the money and was in a very hysterical condition, during which visit she said, "My God, what has happened, Mrs. Lydig?" to which Mrs. Lydig replied, "Calm yourself, Juanita, your money is all right. Nothing has happened to your money." In reply to which appellant said, "I don't care about the money; I can go to jail. I have perjured myself." It was further proved that upon this occasion, after appellant had quieted herself, Mrs. Lydig produced the envelope and appellant counted the contents, which consisted of $2,300, and at which time Mrs. Lydig requested the appellant to give a receipt for the money, with which request appellant complied, with the understanding that the receipt should not set forth the amount of money returned to her by Mrs. Lydig. It was proved that during the month of June, 1937, appellant was talking to a friend by the name of Mrs. Margaret Darnell, at which time appellant said that she had the money, the $3,000, and was going to accuse her husband of stealing it. Thus we see that the *corpus delicti* or falsity of the defendant's sworn statements was proved by the testimony of Dr. Macken's attorney, who was present at the home of the defendant on the evening of June 16th, and who testified that Dr. Macken was within the presence of the witness at all times that they were in the house, and that he did not see Dr. Macken take any envelope or any article of any kind. There was corroboration of this by a deputy sheriff who was called to the home of defendant on the evening in question. And certainly the testimony of Mrs. Lydig and her daughters established facts absolutely incompatible with the innocence of appellant.

Appellant's contention that because the order to show cause served upon her did not include a memorandum of points and authorities, as required by section 527 of the Code of Civil Procedure, the hearing had upon such order was void because the court was without jurisdiction, cannot be sustained. It is true that no points and authorities were served, as contended by appellant, but the failure of such service did not divest the court of jurisdiction. The court acquired jurisdiction over the subject-matter of the divorce action by the filing of the complaint, and jurisdiction of the person of appellant was acquired through service of the complaint and summons upon her. From that time on the court was authorized to proceed. Appellant appeared in response to the order of the court and participated in a trial on the merits of that proceeding. Conceding that the requirement of service of points and authorities under section 527 of the Code of Civil Procedure is mandatory, nevertheless, the conduct of appellant in appearing at the hearing and participating therein was a waiver of the statutory requirement therein and gave the court jurisdiction. Anyone may waive the advantage of a law intended solely for his benefit. (Civ. Code, secs. 3515, 3516.) As was said in *Walberg* v. *Underwood*, 39 Cal. App. 748, 751, 752 [180 Pac. 55], ''Where the object of a notice was accomplished, it is immaterial whether there was notice or not. When both parties appear, no notice whatever is necessary to be shown.''

With reference to count II, appellant urges that the court was without jurisdiction to hear the matters pertinent to the alleged perjury. The record indicates that in the pending divorce action appellant sought an order to show cause against her husband requiring him to appear in court to show cause why he should not pay attorney's fees, court costs, alimony *pendente lite,* allowance for support of the child of the parties, and also why he should not be required to return to appellant ''the sum of $2,800 taken from her purse by plaintiff or his attorney''. In her affidavit made to secure the issuance of such order to show cause appellant swore to the following: ''On the night of June 16, 1937, plaintiff and his attorney, Romaine Hogan, broke in house, took $2800—it was necessary to call police officers to quiet the confusion and disturbance they caused.'' Appellant earnestly contends that the foregoing statement was sworn to for the single purpose of supporting the request contained

in the affidavit that the court make an order requiring her husband to return the $2,800, and that the court, being without jurisdiction either to try the question of title to the $2,800 or to order the husband to return the same, it being community property—the allegedly perjured statement was immaterial as to any matter over which the court had jurisdiction. This might be true if the sworn statement in the affidavit were material only to the issue of the requested return of the $2,800, but such is not the case. The claimed perjured statement was material to give credit to the affiant and to impeach her husband in connection with the other issues raised thereby and over which the court concededly possessed jurisdiction. In *People* v. *Metzler*, 21 Cal. App. 80 [130 Pac. 1192], it was held that testimony which merely affects the credibility of a witness is material, for the reason that such evidence usually tends to strengthen the case of a party to an action or to weaken the defense of his adversary.

The purpose of the affidavit here in question was twofold. First, it served as the basis for an order directed to Dr. Macken to show cause why he should not be required to pay attorney's fees, alimony, allowance for support and custody of child, etc.; and secondly, to be used and considered as evidence, as it was, on the hearing of the order to show cause predicated thereon. The alleged perjured statement in the affidavit certainly affected the moral character of Dr. Macken upon the question of the custody of the child and his right of visitation with the child; and the sworn statement in question certainly had a tendency to affect the credibility of the doctor as a witness. In *Wood* v. *People*, 59 N. Y. 117, 123, it is said: "If the matter falsely sworn to is circumstantially material or tends to support or give credit to the witness in respect to the main facts, it is perjury." In *Rex* v. *Giepe*, 1 Ld. Raym. 256, we find the following: "It is not necessary that it should appear in an information for perjury to what degree the point in which the man is perjured was material to the issue, for if it is but circumstantially material, it will be perjury. . . . So if a witness swears to the credit of another witness, if it be false it will be perjury if it conduced to the proof of the point in issue." *People* v. *Phillips*, 56 Cal. App. 291 [205 Pac. 40], holds that " 'the matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the fact di-

rectly in issue as to have a legitimate tendency to prove or disprove such fact by giving weight or probability to the testimony of a witness testifying thereto, or otherwise.' 22 Am. & Eng. Encyc. of Law, 687, . . . '' When the alleged perjured testimony is used as a basis for impeachment purposes it is material. (*People* v. *Barry,* 63 Cal. 62, 64, 65.) In *People* v. *Albert,* 91 Cal. App. 774, 776 [267 Pac. 587], it was held that ''the false testimony need not be directly material. It is sufficient if it is circumstantially material, the degree of materiality being unimportant.'' ▇ The afore-said statement contained in the affidavit, if untrue, being material to the cause in connection with which it was filed, was legally and properly made the basis of a perjury charge; and the evidence, as heretofore set forth, being sufficient to establish its falsity, the finding of the jury thereon cannot here be disturbed.

Count III alleges that when the order to show cause referred to in count II came on for hearing, the appellant falsely swore to facts alleged in such affidavit to have occurred on the night of June 16, 1937, wherein she charged that her husband and his attorney broke into her home and took the $2,800. What we have said as to the materiality of the alleged perjured testimony in connection with count II applies with equal force to the same contention raised by appellant in her argument urging a reversal of the judgment as to count III. ▇ Appellant, however, further asserts that the judge who presided at the hearing on the order to show cause, and who was not the judge who issued the same, testified at the trial of appellant on the perjury charge that he did not consider the testimony in regard to the $2,800 as material, his testimony in that regard being substantially as follows:

''I have had my memory refreshed and I recall that Romaine Hogan stated something in this manner, 'then you must be taking into consideration the $2,800 upon making this order', that was the order that I was making at that time of July 13, and I stated that I was not taking into consideration the $2,800 in making the order and that I was not going to decide which one of them had taken the $2,800, as I was not called upon to decide that question at that time, and I believe that I stated there was enough other testimony sufficient to make the order.''

It is the contention of appellant that when the judge who presided at the hearing of the order to show cause testified that he did not consider the testimony in regard to the $2,800 as material, such testimony cannot be made the basis of a perjury prosecution. We are unable to sustain appellant's claim in this regard. It is well settled in our law that it is for the trial judge presiding in the criminal action to determine the materiality of the alleged perjured testimony, and it is not a question for the determination of the judge before whom the alleged perjury was committed.

"The question of the materiality of evidence, no matter when or how it may arise, is always one of law for the court, and not of fact for the jury. It usually arises in the ordinary trial of a cause, where one party offers evidence, and the other objects to it as material; and in that case it would be clear to every one that the question was for the court. But the question is exactly the same when, on a trial for perjury, the materiality of the alleged false testimony arises. Of course, a jury, in rendering a general verdict in a criminal case, necessarily has the *naked* power to decide all the questions arising on the general issue of not guilty; but it only has the right to find the facts, and apply to them the law as given by the court. And on a trial for perjury, it is the duty of the court to instruct the jury as to what facts would show material testimony." (*People* v. *Lem You,* 97 Cal. 224, 228 [32 Pac. 11].)

The ordinary test of materiality is whether the testimony given could have probably influenced the trial judge before whom the case was being tried, upon the issue involved therein, and it was the exclusive right of the trial judge in the criminal case to determine the materiality of the alleged perjured testimony and to instruct the jury thereon.

Finally, appellant complains of the action of the trial court in the giving of certain instructions, the gist of which criticism is based on the claim that the court neglected to advise the jury that it was necessary for the prosecution to prove its case by the direct and positive testimony of two witnesses or of one witness and corroborating circumstances; that the instructions given might well have led the jury to conclude that so long as they were convinced beyond a reasonable doubt of the guilt of the defendant they could so find, regardless of whether or not such conviction in their

minds was brought about through the testimony of a single witness, or upon circumstantial evidence alone, rather than direct or positive evidence. It would unduly prolong this opinion to here set forth the instructions complained of, but we have read all of the instructions offered, given and refused, and find no prejudicial error in the giving or refusal of any instructions. It must be remembered that instructions must not be considered singly, but as an entirety, and when so viewed the instructions given in the instant case are not subject to the criticism urged by appellant. A review of all the instructions given convinces us that the trial judge fully and fairly advised the jury as to the kind, quality and degree of proof necessary before appellant could be convicted of perjury. This is all that was required. (*People* v. *Kelly*, 70 Cal. App. 519, 524 [234 Pac. 110] ; *People* v. *Alston*, 139 Cal. App. 575, 576 [34 Pac. (2d) 759] ; *People* v. *Bolton*, 215 Cal. 12, 22 [8 Pac. (2d) 116] ; *People* v. *Jordan*, 24 Cal. App. (2d) 39, 54 [74 Pac. (2d) 519].) In reading the instructions given, we are impressed not only with the fact that the trial judge painstakingly and zealously guarded the rights of appellant, but that if there was any error in connection with the instructions, it is to be found in the giving of certain instructions requested by appellant and which were much more favorable to her than she was probably entitled to under the law.

The appellant having been fairly tried, the order denying her motion for a new trial should be, and it is, affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 14, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939.