[Crim. No. 10534. In Bank. Mar. 2, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. CLARENCE L. PIERCE II, Defendant and Respondent.

54

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood, Chief Deputy District Attorney, and Harry B. Sondheim, Deputy District Attorney, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, Marvin Schwartz and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

MOSK, J.—Defendant, Clarence Pierce, was held to answer on an information charging him with two counts of perjury. His motion to set aside the information under section

995 of the Penal Code was granted by the superior court, and the People appeal from the ensuing dismissal.[1]

The charges of perjury arose from two allegations made by Pierce in a petition for a writ of habeas corpus. The first count of the information was based on Pierce's statement in the petition that a deputy sheriff who arrested him on November 11, 1964, struck him in the abdomen several times with a flashlight, and the second count, on his assertion that on November 17, 1964, while in the custody of the sheriff's department, he was hit several times by a deputy sheriff and left lying on the floor. The information alleged that Pierce had caused the petition to be filed in the superior court, that these statements were wilfully and knowingly made under penalty of perjury, that Pierce knew they were false and that they were material to the issues tendered in the habeas corpus petition.

Pierce argues that his declaration under penalty of perjury in the habeas corpus petition was not voluntarily made and that the evidence introduced at the preliminary hearing did not show probable cause. We conclude there is no merit in the first of these contentions but that the evidence does not establish probable cause as to either count of the information.

The evidence introduced at the preliminary hearing was as follows:

On November 11, 1964, Officers Kenneth Pollock and Carl Zemke, armed with a search warrant, went to defendant's home to arrest him on a charge of battery. The officers pounded on the door and window, identified themselves, announced their mission, and demanded that Pierce open the door. When he did so, the officers placed him under arrest. They permitted him to get dressed, placed handcuffs on him, walked with him to the patrol car and placed him in the rear seat. Pierce expressed anger, used profane language and threatened to "get" the officers' jobs and badges. Both Pollock and Zemke denied hitting Pierce at the time of the arrest.

Pierce was booked, and the next day he appeared before a magistrate, who ordered him released on his own recognizance. However, the sheriff continued to hold him as a parole vio-

---

[1]Section 995 of the Penal Code provides: "The . . . information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases . . . . 1. That before the filing thereof the defendant had not been legally committed by a magistrate. 2. That the defendant had been committed without reasonable or probable cause."

lator, pursuant to section 3056 of the Penal Code.[2] On November 17 Pierce again appeared in the municipal court, this time on another charge, and when he returned to the jail about 5 p.m., Ronald Zielinski, one of the deputies on duty at the Inmate Reception Center, searched Pierce for contraband. The search disclosed two safety pins, which Zielinski suspected Pierce could use as a handcuff-opening device, secreted in a package of cigarettes. The possession of the safety pins as such was not illegal since they were issued to the prisoners for hanging up clothing.

Zielinski intended to write a report regarding the incident for the purpose of instituting disciplinary action against Pierce. However, he had a number of additional prisoners to search and placed Pierce in a one-man cell in the rear of what is denominated the court detention area, a large room about 50 feet by 125 feet. The main detention cell is on the east side of the room and has solid walls, while the individual cells, which are scattered throughout the room, have only bars and are not separated by solid walls. Although Zielinski went back to the area while Pierce was in the cell, he did not see Pierce again until about a half hour later. At that time Pierce stated that an old paralysis was bothering him and that his right thumb hurt. Zielinski did not see anything wrong with Pierce's hand but took him to the prison clinic. Zielinski denied striking Pierce or seeing anyone else strike him, and testified that he heard no unusual noises from the cell.

Two officers other than Zielinski were on duty in the court detention area during the period of Pierce's incarceration there. Gerald Harris testified that he was out to dinner between 5 and 5:30 p.m. on the evening in question, that he did not recall seeing Pierce, and that while he was in the area he saw no evidence that prisoners were being abused.

The third officer, Douglas Hanskat, stated that he was on duty in the court detention area between 5 and 6 p.m. on November 17 but did not recall having seen Pierce and did not know whether anyone was placed in the detention cell during those hours. He did not hear any signs of an altercation, did not see any prisoner being struck by Zielinski or anyone else, and received no complaints of abuse from the prisoners.

---

[2] Section 3056 of the Penal Code provides: ''Prisoners on parole shall remain under the legal custody of the [Department of Corrections] and shall be subject at any time to be taken back within the inclosure of the prison.''

On November 19, Pierce presented the habeas corpus petition which is the basis of the perjury charge to Edgar Vestey, a senior deputy sheriff at the jail. The petition was addressed to the Superior Court of Los Angeles County and alleged that at the time of the arrest an officer led Pierce to the side of the squad car and hit him several times in the abdomen with a flashlight. It was further alleged that on November 17, after Pierce returned from court and the safety pins were found on his person, he was taken into another room by a deputy. Later, the petition continued, the officer returned with another deputy and questioned Pierce and thereafter he was "hit in the abdomen several times and left lying on the floor." According to the petition, the officers, whose names and badge numbers Pierce did not know, made remarks during these episodes, such as, "This is what we do to tough guys" and "if you won't admit it [planning an escape] I guess we'll just have to use force."[3] The petition also contained a number of other claims of misconduct by prison authorities, such as an allegation that Pierce was "brutally searched."

Pierce asserted that he was placed in solitary confinement, that he was still there on November 18, that he could not receive or send mail, that he was being held incommunicado, and that "this harassment is unjust and cruel punishment in solitary confinement" and "a violation of petitioner's rights." The circumstances of the signing and verification of the petition will be discussed hereinafter.

Officer Vestey testified that Pierce asked him to send the petition to Judge Dills of the Compton Municipal Court. However, Vestey placed the petition in an envelope addressed to Judge Wapner of the Los Angeles Superior Court. The document was placed in the mails by Vestey on November 19 but did not arrive in the office of the clerk of the superior court until November 30. There was no stamp on the envelope.

On December 1, a judge of the Los Angeles Superior Court issued a writ of habeas corpus, and the sheriff filed a return to the writ stating that he was holding Pierce under the authority of section 3056 of the Penal Code as a parole violator. Zielinski, Pollock and Zemke filed supporting affidavits deny-

---

[3]Pierce also alleged that at the time he was booked the arresting officer told the deputy who booked him, "Watch this man, he is a badge snatcher" and the booking officer replied, "We'll take extra good care of him." Another assertion made is that when Zielinski found the safety pins he said, "Well, it looks like I've got you this time" and "You would be surprised what we can make stick."

ing that they had used physical force against Pierce, and denying that they had made the remarks alleged. Pierce appeared for the hearing on his allegations on December 4 and requested the appointment of counsel. Five days later he stipulated in open court that the petition could be deemed a traverse to the return, and requested that his petition for the writ be dismissed. The request was granted.

Section 118 of the Penal Code provides, "Every person who . . . certifies under penalty of perjury in any of the cases in which such . . . certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

Pierce maintains that his statements in the habeas corpus petition were not *wilfully* made under penalty of perjury because he did not verify the petition voluntarily but was compelled to do so by Vestey. The following appears at the beginning of the petition: "Comes now, I, Clarence L. Pierce, known hereafter as petitioner throughout this writ, swears to under the penalty of perjury, that every statement, contention and accusation stated in this writ, be the whole truth, respected for under our highest laws of the land." Pierce signed the petition three times. It can be inferred from the evidence that the first signature and the date of November 18, 1964, were appended before he presented the petition to Vestey.[4] On that occasion Vestey told Pierce that he would not mail the petition unless Pierce added an attestation paragraph to it, understood its contents, and signed it. Pierce thereupon wrote an attestation in the usual form, signed a second time after the attestation, added the place of execution and the date November 19, 1964, and signed a third time. He wrote, after the attestation clause, that he was ordered to write it by the senior deputy. Vestey ordered him to erase the statement, but Pierce added to the paragraph immediately above his first signature the words, "Last paragraph of this writ ordered to be put on writ by Senior Deputy or would not file said writ. Fifth line from bottom erased as ordered."

Even if we must assume that the attestation clause which Vestey ordered Pierce to write and sign as a condition of mailing was not voluntarily added by Pierce, there is no claim that the initial paragraph of the petition, in which he also

---

[4]Vestey testified that the first signature was not made in his presence and that he took the document from Pierce and mailed it after Pierce had completed it.

declared that he was making the statements under penalty of perjury, was not voluntarily inserted. At most, the evidence as to the circumstances surrounding the addition of the second attestation clause would only raise a conflict in the evidence as to the wilfulness of Pierce's declaration. The argument is made, however, that the first attestation is not sufficient to constitute a declaration under penalty of perjury because it appears at the beginning rather than at the end of the petition, and that section 2015.5 of the Code of Civil Procedure requires that such a declaration appear at the end of a document.

Section 1474 of the Penal Code provides that a habeas corpus petition must be verified by the oath or affirmation of the party making the application, and section 2015.5 of the Code of Civil Procedure states, "Whenever, under any law . . . any matter is required . . . to be supported . . . by the sworn statement . . . in writing of the person making the same . . . such matter may with like force and effect be . . . established . . . by the unsworn statement . . . in writing of such person stating the date and place of execution within this State and which is *subscribed* by him and certified or declared by him to be true 'under penalty of perjury,' which certification or declaration may be in substantially the following form: I certify (or declare) under penalty of perjury that the *foregoing* is true and correct." (Italics added.)

Pierce claims that the italicized words establish that only a declaration under penalty of perjury at the end of a document is valid. It is true, of course, that the section requires that the document must be subscribed by the declarant, but the petition clearly met this requirement since Pierce signed the document voluntarily at its end and before the attestation clause allegedly inserted involuntarily was added.[5] Section 2015.5 does not require the declaration under penalty of perjury to appear at the end of the document, although the form suggested in the section contemplates that this is the ordinary placement of the declaration, and it is no doubt the better practice.

Another contention raised by Pierce is that he instructed Vestey to mail the petition to Judge Dills of the Compton Municipal Court (which had no jurisdiction to grant the writ) and he claims that if he had known that

---

[5] The word "subscribe" is defined as follows: "To write (as one's name) underneath: sign (one's name) to a document . . . to sign with one's own hand." (Webster's Third New Internat. Dict. (1961).)

Vestey would send the petition to the superior court instead of to the municipal court he might never have permitted it to leave his hands. The petition itself stated that the application was made to the superior court, Pierce appeared before a judge of that court in the habeas corpus proceeding and asked for counsel, and the conclusion is warranted that he intended to file the petition in a court which could grant him the relief he sought. Moreover, section 124 of the Penal Code provides that an affidavit is complete within the meaning of the perjury statutes from the time it is delivered by the accused to any other person, with the intent that it be published as true.

We turn now to the question whether the hearing establishes probable cause. In making this determination we are, as was the superior court, bound by the rule that an information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed, and that probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion that an offense has been committed and the accused is guilty of it. (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *Cron* (1962) 207 Cal.App.2d 452, 456 [24 Cal.Rptr. 587]; *People* v. *Tracy* (1962) 199 Cal.App.2d 163, 167 [18 Cal.Rptr. 487].)

Clearly, the evidence recited above is sufficient to establish the falsity of Pierce's allegation in the habeas corpus petition that he was struck with a flashlight by one of the arresting officers, since the only officers who made the arrest denied the charge.

The issue is more difficult as to the second count. As we have seen, Pierce alleged that he did not know the names of those who assertedly attacked him on November 17 at the county jail. The People rely on the testimony of the three officers who were on duty in the court detention area on the evening in question as establishing probable cause. They each denied striking Pierce and testified in effect that they did not hear or see anything which would lead them to believe that Pierce had been mistreated. The evidence shows, however, that none of these persons saw Pierce between the hours of 5 and 5:30 p.m., the period during which he was incarcerated in the court detention area. Harris was away from the area having his dinner until 5:30. Zielinski left after he placed Pierce in the cell at 5 p.m. and, although he went back into the room from time to time thereafter, he did not see Pierce again until

5:30. Hanskat, the only officer in the court detention area throughout the time Pierce was there, did not recall having seen Pierce at all on November 17, and, according to Zielinski, did not go into the rear part of the room where Pierce's cell was located.

It was not shown that Hanskat was stationed in a portion of the large room where Pierce's cell was located from which he would have seen any acts of violence against Pierce. Moreover, it does not appear how many persons had access to Pierce's cell. The officers testified that approximately 12 persons were on duty in the booking division during this period, that all of them had a key to the court detention area, and that it was a ''common key.'' Thus, the People failed to establish either that all the officers who might have had access to Pierce denied striking him or that Hanskat (or anyone else who contradicted Pierce's assertions) had Pierce under observation during the crucial period of time or was so positioned that he would have known if Pierce had been mistreated. Such a showing does not impose an unreasonable burden on the prosecution since the evidence pertaining to these matters was peculiarly within its knowledge. Under these circumstances, there is no contradiction between Pierce's assertion that he was mistreated during the time he was confined in the court detention area and the testimony of Officers Zielinski, Hanskat, and Harris that they did not strike Pierce or have reason to believe that anyone else had done so. We cannot say that the evidence was such as to lead a man of ordinary caution to entertain a strong suspicion that Pierce committed perjury insofar as the second count of the information is concerned and, therefore, the motion under section 995 of the Penal Code was properly granted as to this count.

The next question is whether the statements upon which the charges of perjury are based were material to the habeas corpus proceeding. Under section 118 of the Penal Code, a falsehood must be material in order to sustain a charge of perjury. The question of materiality is one of law to be determined by the court which tries the perjury charge. (*People v. Sagehorn* (1956) 140 Cal.App.2d 138 [294 P.2d 1062].) The test is whether the statement could probably have influenced the outcome of the proceedings, and the actual belief or opinion of the judge in the original proceeding is not controlling. (*People v. Barry* (1957) 153 Cal.App.2d 193, 209 [314 P.2d 531]; *People v. Mackcn* (1939) 32 Cal.App.2d 31, 41 [89 P.2d 173].)

The sheriff, in his return to the writ of habeas corpus issued by the superior court, stated that he was holding Pierce as a parole violator under section 3056 of the Penal Code. Pierce asserts that his allegations of brutality are immaterial to the question whether he was being legally held under this section. While this may be true, it cannot be said that Pierce's sole purpose in seeking the writ was to challenge the sheriff's authority to imprison him under section 3056. It is not precisely evident what relief he sought by his petition, but it may be inferred that he was attempting to secure release from solitary confinement, alleviation of the physical abuse he was allegedly suffering, or both. ██ It is settled that habeas corpus is a proper remedy where, although a prisoner is lawfully in custody, he is deprived of some right to which he is entitled, even in his confinement. (*In re Ferguson* (1961) 55 Cal.2d 663, 669 [12 Cal.Rptr. 753, 361 P.2d 417].) The writ has been used to examine allegations by a prisoner that he has been beaten while in state prison. (*In re Riddle* (1962) 57 Cal.2d 848 [22 Cal.Rptr. 472, 372 P.2d 304].)

██ In the light of these authorities, the allegations of brutality were unquestionably material to challenge the conditions of Pierce's confinement insofar as they related to his claim that he was mistreated while he was a prisoner in the county jail, the statement which formed the basis of the second count.

██ However, it cannot be said that Pierce's assertion that an officer hit him with a flashlight at the time of the arrest was material to the habeas corpus proceeding. Insofar as the purpose of the petition was to alleviate the conditions of Pierce's confinement and to accord him those rights to which he was entitled even as a prisoner, it is difficult to perceive how this relief would be affected by an assertion that he was struck by an officer while en route to the county jail. We cannot say that the trial judge would probably have been influenced in granting or denying the writ by an allegation so tenuously connected with the relief available in the habeas corpus proceeding.

The order is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would reverse the order for the reasons expressed by Mr. Justice Herndon in the opinion prepared by him for the Court of Appeal in *People* v. *Pierce* (Cal.App.) 52 Cal.Rptr. 853.