[No. F043941. Fifth Dist. Aug. 18, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS MIGUEL RUBIO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Charles A. French and Laura Wetzel Simpton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORNELL, J.**—Luis Miguel Rubio was convicted of one count of perjury (Pen. Code, § 118)[1] and sentenced to the midterm sentence of three years. He argues on appeal that the trial court improperly instructed the jury and abused its discretion when it refused to sentence him to probation.

We agree with Rubio's argument that the 2003 version of CALJIC No. 7.20 incorrectly defines materiality. This instruction correctly informs the jury that a false statement must be material before the defendant can be found guilty of perjury. The instruction then defines a false material statement as one that "could influence the outcome of the proceedings in which it is uttered." We think the correct definition of a false material statement is one that "could probably have influenced the outcome" of the proceeding in which it is uttered. (*People v. Pierce* (1967) 66 Cal.2d 53, 61 [56 Cal.Rptr. 817, 423 P.2d 969].)

We conclude, however, the error was harmless beyond a reasonable doubt. We also reject Rubio's contention that the trial court abused its discretion in denying him probation and affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Juan Nava was prosecuted for various gang-related crimes. Rubio was called as a defense witness during Nava's trial, apparently in an attempt to establish an alibi for Nava. During his testimony, Rubio denied he had any tattoos.

Rubio has a tattoo consisting of three dots on the web of his left hand. He testified the three dots signify "my crazy life" or "mi vida loca." Expert witness Probation Officer Leonard Bakker testified the tattoo could represent

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

"mi vida loca," but it also was a symbol of the East Side Dukes criminal street gang. Based on the tattoo and other information, Bakker concluded that Rubio was a member or associate of the East Side Dukes.

Rubio was charged with one count of perjury. (§ 118.) The information also alleged the crime was committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The jury found Rubio guilty of perjury but found the gang enhancement not true. The trial court denied probation and sentenced Rubio to the midterm sentence of three years.

## DISCUSSION

### I. *CALJIC No. 7.20*

CALJIC No. 7.20 defines the elements of perjury. The trial court instructed the jury with a modified version of CALJIC No. 7.20 (7th ed. 2003),[2] which informed the jury that a defendant is guilty of perjury if he or she makes a false material statement while under oath. A statement was defined as material "if it could influence the outcome of the proceedings in which it is uttered."

We begin with the evolution of CALJIC No. 7.20. Prior to 1995, the question of whether the alleged false statement was material was an issue of law determined by the court. (See, e.g., *People v. Pierce, supra,* 66 Cal.2d at p. 61.) A long line of cases stated that a false statement was material if it

---

[2] The instruction as read to the jury stated in full: "Every person who, having taken an oath to testify truly before any competent tribunal, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, is guilty of the crime of perjury in violation of Penal Code section 118. [¶] A false statement is material if it could influence the outcome of the proceedings in which it is uttered. Whether it actually had that effect is irrelevant. [¶] It is alleged the defendant made the following false statement: [¶] That he did not have any tattoos on his person. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person knowingly took an oath to testify truly before a competent tribunal, and willfully stated as true, matter which was false; [¶] 2. The testimony, was given in circumstances in which an oath may by law be administered, and was delivered to another person with the specific intent that it be uttered or published as true; [¶] 3. The person knew the statement was false; [¶] 4. The false statement was material; and [¶] 5. The person had the specific intent to testify falsely under oath. [¶] The falsity of defendant's statement may be established by direct or circumstantial evidence. However, the defendant may not be convicted of perjury where the only proof of the falsity of the statement is the testimony of one witness which contradicts defendant's statement. [¶] Perjury requires that the statement be made willfully by a person who knows that the statement is being made under oath and who knows or believes that the statement is false. A statement made under an actual mistake and in a belief that it is true is not perjury even though the statement is false. [¶] The word 'willfully' simply means a purpose or willingness to commit the act or make the omission referred to."

"could probably have influenced the outcome of the proceedings, and the actual belief or opinion of the judge in the original proceeding is not controlling. [Citations.]" (*Ibid.*; see also *People v. Feinberg* (1997) 51 Cal.App.4th 1566, 1575 [60 Cal.Rptr.2d 323]; *People v. Jiminez* (1992) 11 Cal.App.4th 1611, 1622 [15 Cal.Rptr.2d 268]; *People v. McRae* (1967) 256 Cal.App.2d 95, 106 [63 Cal.Rptr. 854]; *People v. Davidson* (1964) 227 Cal.App.2d 331, 335 [38 Cal.Rptr. 660]; *People v. Grider* (1962) 200 Cal.App.2d 41, 45 [19 Cal.Rptr. 41]; *People v. Di Giacomo* (1961) 193 Cal.App.2d 688, 699–700 [14 Cal.Rptr. 574]; *People v. Barry* (1957) 153 Cal.App.2d 193, 209 [314 P.2d 531].)

Because the issue of materiality was considered a question of law for the court, CALJIC No. 7.20 concluded, "If you find that the defendant made [one or more of] the statement[s] as charged, such statement[s] [was] [a] [were] material matter[s] within the definition of perjury just read to you." (CALJIC No. 7.20 (5th ed. 1988).)

In *People v. Kobrin* (1995) 11 Cal.4th 416 [45 Cal.Rptr.2d 895, 903 P.2d 1027], the Supreme Court, consistent with *United States v. Gaudin* (1995) 515 U.S. 506 [132 L.Ed.2d 444, 115 S.Ct. 2310], *Sullivan v. Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078], and *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], held that materiality was an issue that must be decided by the jury because it was an element of the crime of perjury. In dicta, the Supreme Court also stated the test of materiality as "whether the statement or testimony 'might have been used to affect [the proceeding in or for which it was made].' [Citations.]" (*Kobrin*, at p. 420.) The Supreme Court cited section 123 and *Pierce* as authorities for this definition. Section 123 addresses the situation where the witness claims he or she did not know the false statement was material. *Kobrin* quoted a portion of the last sentence of section 123. This sentence reads in full: "It is sufficient that it was material, and might have been used to affect such proceeding."[3] As stated above, *Pierce* formulated the test of materiality as whether it "could probably have influenced the outcome of the proceedings, and the actual belief or opinion of the judge in the original proceeding is not controlling. [Citations.]" (*People v. Pierce, supra,* 66 Cal.2d at p. 61.)

CALJIC No. 7.20 was revised to inform the jury that it must decide whether the false statement was material and defined materiality for the jury. Consistent with *Pierce*, CALJIC No. 7.20 stated, "A false statement is

---

[3] Section 123 states in full: "It is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him; or that it did not, in fact, affect the proceeding in or for which it was made. It is sufficient that it was material, and might have been used to affect such proceeding."

material if [it could probably have influenced the outcome of the proceedings in which it was uttered. Whether it actually had that effect is irrelevant.]" (CALJIC No. 7.20 (6th ed. 1996).)

Materiality was defined in this manner until the seventh edition of CALJIC was published in 2003. In this edition, the instruction stated, "A false statement is material if [it could influence the outcome of the proceedings in which it is uttered. Whether it actually had that effect is irrelevant.]" (CALJIC No. 7.20 (7th ed. 2003).) The Use Note does not explain why the word "probably" was omitted. Only the first paragraph of the Use Note addresses the issue of materiality, and it is identical to the first paragraph of the 1996 Use Note. Both versions cite *Pierce* as authority for the definition of materiality. As noted above, *Pierce* defined materiality consistent with the 1996 version of CALJIC No. 7.20. Our research has not located any authority for the change in the instruction.

The cases cited by the People do not approve the version of the instruction that is before us. *Kobrin* was preceded by *People v. Hedgecock* (1990) 51 Cal.3d 395, 405 [272 Cal.Rptr. 803, 795 P.2d 1260]. One issue in *Hedgecock* was how materiality should be defined when determining whether false statements in a public filing required by the Political Reform Act of 1974 were perjurous. (Gov. Code, § 81000 et seq.) The Supreme Court acknowledged that the definitions used in the context of a judicial proceeding were of no assistance. (*People v. Hedgecock, supra,* 51 Cal.3d at p. 405.) In dicta, the Supreme Court cited *Pierce* in defining a material statement as a false statement that "could have 'influenced the outcome of the proceedings.' " (*Hedgecock,* at p. 405.)

*People v. Gamble* (1970) 8 Cal.App.3d 142, 146 [87 Cal.Rptr. 333], stated the issue of materiality depended on whether the statement had a tendency to influence the trial. *People v. Poe* (1968) 265 Cal.App.2d 385, 391 [71 Cal.Rptr. 161], quoted Witkin in stating the same formulation. *People v. Sagehorn* (1956) 140 Cal.App.2d 138, 148 [294 P.2d 1062], and *People v. Darcy* (1943) 59 Cal.App.2d 342, 349 [139 P.2d 118], disapproved on other grounds in *Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 301 [124 Cal.Rptr. 204, 540 P.2d 44], both found the perjurous statements material using the "could influence" formulation of materiality. Since *Gamble, Poe, Sagehorn,* and *Darcy* all preceded *Kobrin,* none of the cases address the proper language to define "material" in a jury instruction.

This lack of consistency among the cases provides little guidance. We think, however, the proper definition of "material" is found in *Pierce* and the early version of CALJIC No. 7.20.

Section 118, subdivision (a) defines perjury as willfully stating under oath "any material matter which he or she knows to be false." The relevant

definition of "material" is "important, essential, or pertinent (*to* the matter under discussion)." (Webster's New World Dict. (3d college ed. 1988, p. 834.) To state that a false statement is material if it could influence the outcome of the proceeding is simply too broad. Anything could influence the outcome of a proceeding. A jury easily could understand this definition of materiality to mean that a false statement is material if it could possibly influence the outcome of the proceeding. Virtually any false statement could possibly influence the outcome of the proceeding. As CALJIC No. 2.90 informs the jury, everything in human affairs is open to some possible doubt. This definition seems to us to render the element of materiality virtually moot.

An instruction that informs the jury that a false statement is material if it could probably influence the outcome of the proceeding is much more consistent with the definition of "material" and the cases we have reviewed. This instruction conveys the requirement that the false statement must be important to the matter under discussion. It also conveys to the jury that false statements on matters not pertinent to the proceeding do not constitute perjury.

We do not think that *Kobrin* requires a different result. As authority for its statement that "materiality" means "whether the statement or testimony 'might have been used to affect [the proceeding in or for which it was made],' " the Supreme Court cited *Pierce* and section 123. (*Kobrin, supra*, 11 Cal.4th at p. 420.) In our view, neither *Pierce* nor section 123 supports such a broad definition of materiality. *Pierce* defines materiality in terms of a false statement that could probably influence the outcome of the proceeding. Section 123 states a false statement must be "material, *and* might have been used to affect" the proceeding. (Italics added.) The use of the conjunction "and" in section 123 denotes dual requirements: (1) the false statement must be material, and (2) the false statement must have been used in a fashion that might have affected the proceeding. We do not believe the sentence should be read as providing a definition for "material."

The United States Court of Appeal, Ninth Circuit, recently reached the same conclusion in *Chein v. Shumsky* (9th Cir. 2004) 373 F.3d 978. Chein was convicted of perjury after a jury trial. Consistent with *Pierce* and the pre-2003 version of CALJIC No. 7.20, the jury was instructed that a statement is material if it could probably have influenced the outcome of the proceeding. In deciding the correct standard to be applied in its review, the appellate court addressed the above identified statement in *Kobrin*. "It does not appear that this *dicta* in *Kobrin*, derived from California Penal Code § 123, purported to overrule earlier formulations of the materiality standard. The issue of the applicable standard (as opposed to the proper decisionmaker) was not before the court, and *Kobrin* cites approvingly to *Pierce*, at the very

spot where the 'could probably have influenced the outcome of the proceedings' standard is stated." (*Chein,* at pp. 984–985, fn. omitted.)

Since we conclude that the jury instruction for materiality was incorrect, the issue becomes whether reversal is required. Rubio argues the instruction resulted in a "structural error" that requires reversal per se.

"The United States Supreme Court has classified constitutional errors into two groups; structural errors, which are subject to automatic reversal, and trial errors: subject to a harmless error analysis. (See, e.g., *Neder v. United States* (1999) 527 U.S. 1 [144 L.Ed.2d 35, 119 S.Ct. 1827], and *Arizona v. Fulminante* (1991) 499 U.S. 279 [113 L.Ed.2d 302, 111 S.Ct. 1246], (opn. of Rehnquist, C. J., for the court as to pt. II).)

"Structural errors comprise a very limited class of cases and occur where there is a defect affecting the framework within which the trial proceeds rather than simply an error in the trial process itself. (*Neder v. United States, supra,* 527 U.S. at pp. 8–9.) Structural errors have been found where there was a complete denial of counsel (*Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792]), where the trial judge was biased (*Tumey v. Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437]), where there was racial discrimination in the selection of the grand jury (*Vasquez v. Hillery* (1986) 474 U.S. 254 [88 L.Ed.2d 598, 106 S.Ct. 617]), where there was a denial of self-representation (*McKaskle v. Wiggins* (1984) 465 U.S. 168 [79 L.Ed.2d 122, 104 S.Ct. 944]), where there was a denial of a public trial (*Waller v. Georgia* (1984) 467 U.S. 39 [81 L.Ed.2d 31, 104 S.Ct. 2210]), and where the reasonable doubt instruction was defective (*Sullivan v. Louisiana*[, *supra,*] 508 U.S. 275).

"Most constitutional errors are subject to harmless error analysis because they do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. (*Neder v. United States, supra,* 527 U.S. at pp. 8–9.) Harmless error analysis has been utilized by the Supreme Court where improper instructions have been given on an element of an offense (*Yates v. Evatt* (1991) 500 U.S. 391 [114 L.Ed.2d 432, 111 S.Ct. 1884] [mandatory rebuttable presumption], overruled on other grounds in *Estelle v. McGuire* [(1991)] 502 U.S. [62,] 72, fn. 4 [116 L.Ed.2d 385, 112 S.Ct. 475]; *Carella v. California* (1989) 491 U.S. 263 [105 L.Ed.2d 218, 109 S.Ct. 2419] [mandatory conclusive presumption]; *Pope v. Illinois* (1987) 481 U.S. 497 [95 L.Ed.2d 439, 107 S.Ct. 1918] [misstatement of element]; *Rose v. Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] [mandatory rebuttable presumption], overruled on other grounds in *Brecht v. Abrahamson* (1993) 507 U.S. 619, 637 [123 L.Ed.2d 353, 113 S.Ct. 1710]) and where elements of an offense have been omitted. (*Johnson v. United States* (1997)

520 U.S. 461 [137 L.Ed.2d 718, 117 S.Ct. 1544]; *California v. Roy* (1996) 519 U.S. 2 [136 L.Ed.2d 266, 117 S.Ct. 337].) *Neder* involved a failure to instruct the jury on an element of the offense, specifically the requirement that a misstatement on a tax form in a tax fraud case must be material. The Supreme Court concluded that the error was subject to harmless error analysis. (*Neder v. United States, supra,* 527 U.S. at pp. 7–8.)" (*People v. Magee* (2003) 107 Cal.App.4th 188, 193–194 [131 Cal.Rptr.2d 834].)

In *Magee*, we held that a failure to instruct the jury on an element of the charged offense was subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*People v. Magee, supra,* 107 Cal.App.4th at p. 194.) We see no logical reason to apply a different standard to this case. We may affirm, therefore, only if it appears beyond a reasonable doubt that the incorrect definition of "material" in CALJIC No. 7.20 did not contribute to the verdict. (*Neder v. United States, supra,* 527 U.S. at p. 15.)

The People argue that the failure to disclose the tattoo was material because the tattoo signified gang membership and would therefore disclose to a jury Rubio's potential for bias in an effort to aid a fellow gang member. The People suggest that because the prior trial was gang related, Rubio was motivated by his gang ties to fabricate an alibi for Nava.

Rubio's counsel did not address materiality in his closing argument. Instead, he focused on intent, arguing that Rubio made an innocent mistake in answering the question and therefore lacked the requisite intent to testify falsely under oath.

False testimony that affects the credibility of a witness is material and will support a perjury conviction. (See, e.g., *People v. Macken* (1939) 32 Cal.App.2d 31, 39–40 [89 P.2d 173].) Rubio essentially conceded the fact of materiality by focusing on another element of perjury—whether he had the specific intent to testify falsely. We can see no possibility, under these facts, that the erroneous instruction contributed to the verdict. Therefore, the error in instruction does not require reversal of the judgment.

II. *Probation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 927.

## DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied September 8, 2004, and appellant's petition for review by the Supreme Court was denied November 10, 2004. Kennard, J., was of the opinion that the petition should be granted.